[No. B045007. Second Dist., Div. Four. Aug. 14, 1990.]

AIU INSURANCE COMPANY, Plaintiff and Appellant, v. ROXANI M. GILLESPIE, as Insurance Commissioner, etc., Defendant and Respondent.

**COUNSEL**

Kaye, Scholer, Fierman, Hays & Handler, Kenneth R. Feinberg, David O. Bickart, John G. Bickerman, Renee I. Wolf and Kenneth Freeling for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Jack T. Kerry, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**WOODS (A. M.), P. J.**—Plaintiff AIU Insurance Company (AIU) appeals from the order denying its petition for writ of mandate seeking to compel

respondent Roxani M. Gillespie, Commissioner of Insurance of the State of California (Commissioner), to set aside her decision of April 21, 1988.[1] In that decision the Commissioner concluded that AIU failed to comply with the restrictions on the nonrenewal of policies contained in Proposition 103 which was passed by the voters on November 8, 1988.

The Commissioner's finding of noncompliance was based upon nonrenewal notices AIU mailed to certain policyholders of its private passenger automobile insurance on November 4, 1988, four days before Proposition 103 passed. The expiration date of each of those policies was on or after November 9, 1988, the date on which Proposition 103 became effective.

The commissioner ordered AIU to: "1. [R]enew all policies except for those for which valid grounds for cancellation or non-renewal exist pursuant to Section 1861.03(c) of the California Insurance Code. [¶] 2. [R]escind any currently outstanding notices of cancellation or non-renewal which are not based upon one or more of the reasons set forth in Section 1861.03(c) of the California Insurance Code [and] [¶] 3. [u]pon the request of any of its automobile insurance policyholders or the Department of Insurance, . . . offer to renew the policy of any such policyholder whose policy was non-renewed, subsequent to the effective date of Proposition 103, pursuant to a notice of non-renewal based on reasons other than those set forth in Section 1861.03(c)."

In its petition for writ of mandate AIU sought to overturn the Commissioner's ruling on the ground that the nonrenewal restriction in Proposition 103 does not apply when a notice of nonrenewal was mailed prior to the election. The trial court disagreed and denied the requested relief. This appeal followed.

DISCUSSION

■ AIU contends that "[t]he non-renewal provision of Proposition 103 cannot apply to [its] non-renewal notices since the notices were sent prior to the effective date of the provision." That nonrenewal provision is codified in Insurance Code section 1861.03,[2] which provides: "Notwithstanding any other provision of law, a notice of cancellation or nonrenewal of a policy for automobile insurance shall be effective only if it is based on one or more of the following reasons: (A) nonpayment of premium; (B) fraud or material

---

[1] We construe the order denying the petition for writ of mandate as a final judgment. (See *Elmore* v. *Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 191 [205 Cal.Rptr. 433].) We treat AIU's appeal as being from that judgment.

[2] All further statutory references are to the Insurance Code.

misrepresentation affecting the policy or insured; (C) a substantial increase in the hazard insured against." (§ 1861.03, subd. (c)(l).)

■ In resolving this contention we must interpret this nonrenewal restriction " 'in such manner as to give effect to the intent of the voters adopting it. [Citation.]' " (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538 [58 P.2d 1278]; *Diamond International Corp.* v. *Boas* (1979) 92 Cal.App.3d 1015, 1034 [155 Cal.Rptr. 616].) In keeping with this goal " ' "[t]he words must be read in a sense which harmonizes with the subject-matter and the general purpose and object of the amendment, consistent of course with the language itself. The words must be understood, not as the words of the civil service commission, or the city council, or the mayor, or the city attorney, but as the words of the voters who adopted the amendment. They are to be understood in the common popular way, and, in the absence of some strong and convincing reason to the contrary, not found here, they are not entitled to be considered in a technical sense inconsistent with their popular meaning." ' [Citation.]" (*Creighton* v. *City of Santa Monica* (1984) 160 Cal.App.3d 1011, 1018 [207 Cal.Rptr. 78], quoting *Burger* v. *Employees' Retirement System* (1951) 101 Cal.App.2d 700, 702-703 [226 P.2d 38].)

■ We are not writing on a clean slate in construing section 1861.03, subdivision (c). In *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805 [258 Cal.Rptr. 161, 771 P.2d 1247], the court examined whether that provision constitutionally applied to policies issued before enactment of Proposition 103. The court first analyzed what the electorate intended in approving the initiative. In concluding that "the initiative's nonrenewal provision was intended to apply to existing contracts," (*id.* at p. 827) the *Calfarm* court explained: "We . . . conclude that the initiative's nonrenewal provision was intended to apply to existing contracts and that such application does not raise a substantial doubt respecting its constitutionality. [¶] The nonrenewal provision contains no language limiting its effect to policies issued or renewed after November 8, 1988. The omission is significant, because section 1861.01 (the rate-rollback provision) expressly states that it applies only to policies 'issued or renewed on or after November 8, 1988.' The necessary inference is that the nonrenewal provision was not so limited. [¶] The evident purpose of the nonrenewal provision, moreover, mandates its application to existing policies. The provision is obviously designed to give policyholders a measure of assurance that their coverage would continue, and to prevent widespread refusals to renew in response to the initiative's enactment. Accordingly, the conclusion is inescapable that the nonrenewal provision was intended to apply to policies in force on the effective date of Proposition 103." (*Calfarm Ins. Co.* v. *Deukmejian, supra*, 48 Cal.3d at p. 827.)

In *Travelers Indemnity Co.* v. *Gillespie* (1990) 50 Cal.3d 82, 92 [266 Cal.Rptr. 117, 785 P.2d 500], the court confirmed its holding in *Calfarm* "that the mandatory renewal provision was intended to and does apply to all policies in force when the measure took effect . . . ." AIU argues that this conclusion of the *Calfarm* court is inapplicable when a notice of nonrenewal was mailed prior to the election. This argument is built on the supposition that once a notice is mailed the act of nonrenewal is complete. As we now explain, none of the reasons AIU proffers precludes application of *Calfarm*. We therefore affirm.

Initially, to support its position AIU relies upon section 660, subdivision (h) which provides: " 'Nonrenewal' means a notice by the insurer to the named insured that the insurer is unwilling to renew a policy." Section 660, which defines a number of words, begins with the phrase "As used in this chapter." Section 1861.03 is not in the same chapter of the Insurance Code as section 660. Thus, by its own terms, section 660 has no application to section 1861.03. ▮▮▮▮▮ Moreover, even assuming that sections 660 and 1861.03 are in pari materia, AIU's assertion that the nonrenewal of a policy is complete once the notice is mailed, is still not well founded.[3]

▮▮ The nonrenewal provisions in the same chapter as section 600, subdivision (h) govern the procedure by which an insurer can "nonrenew" a policy. For example, section 663 requires that an insurer provide the named insured a notice of nonrenewal at least 20 days prior to the policy expiration along with a statement that the insured is entitled to an explanation of the reasons for the nonrenewal.[4] Indeed, as the Calfarm court explained: "Before enactment of Proposition 103 insurers had an unfettered right to refuse to renew policies [citation]." (*Calfarm Ins. Co.* v. *Deukmejian, supra*, 48 Cal.3d at p. 826, fn. omitted.) Thus, prior to the enactment of Proposition 103, with very limited exceptions,[5] the only limitations on a insurer's right to nonrenew a policy were procedural in nature. In this context, defining "nonrenewal" as a notice was consistent with the procedural nature of the law then governing nonrenewal.

▮▮ Section 1861.03, subdivision (c) is aimed at a much different target than these other provisions. Rather than regulating the procedure an insur-

---

[3] "Pari materia is defined in Black's Law Dictionary (5th ed. 1981) at page 1004: 'Of the same matter; on the same subject; as, laws pari materia must be construed with reference to each other.'" (*Altaville Drug Store, Inc.* v. *Employment Development Department* (1988) 44 Cal.3d 231, 236, fn. 4 [242 Cal.Rptr. 732, 746 P.2d 871].)

[4] In *National Auto. & Casualty Ins. Co.* v. *California Casualty Ins. Co.* (1983) 139 Cal.App.3d 336, 340 [188 Cal.Rptr. 670], we explained that the "obvious purpose" of this notice was to provide the insured "with enough time for renewal of that coverage or acquisition of other coverage."

[5] An example in this narrow exception is section 669.5, which precludes an insurer from refusing to renew a private automobile insurance policy of a peace officer due to "an accident while operating an authorized emergency vehicle, . . ."

er must use to nonrenew a policy, this subdivision restricts an insurer's right to refuse to renew a policy in the first place. In this setting "nonrenewal" as "understood in the common popular way" (see *Creighton* v. *City of Santa Monica, supra,* 160 Cal.App.3d at p. 1018) connotes an insurer's refusal to issue a new policy at the expiration of an existing policy, rather than the means by which that refusal is accomplished. Until the existing coverage expires "nonrenewal" is incomplete: The insured and the insurer are still in a contractual relationship and the policy is in full force and effect. Thus, simply because a notice of nonrenewal was mailed prior to the election does not preclude application of Proposition 103.

Highly analogous to the present case are those cases discussing whether a law restricting a landlord's right to evict a tenant applies to evictions commenced, but not yet final, prior to the law's enactment. The majority of courts to address this issue have concluded that the newly enacted law applies because "the Rent Regulation came into existence while the old landlord-tenant relation was still alive." (*Schwartz* v. *Trajer Realty Corporation* (S.D.N.Y. 1944) 56 F.Supp. 930, 931; Annot., Questions Arising Out of War Conditions (1943) 147 A.L.R. 1181, 1453; Annot., Questions Arising Out of War Conditions (1945) 154 A.L.R. 1441, 1462-1463.)

This analysis is much closer to the question presented here than is the analysis employed in a line of bankruptcy cases on which AIU relies. Exemplary of these cases is *Moody* v. *Amoco Oil Co.* (7th Cir. 1984) 734 F.2d 1200. There, Amoco sent the debtors notice that in 90 days a series of dealership contracts would terminate. After the notices were sent, but before the 90 days elapsed, the debtors filed a bankruptcy petition. Under the extant bankruptcy law the trustee in bankruptcy was entitled to assume executory contracts of the debtor. The question presented in *Moody* was whether there was anything left for the trustee to assume. In concluding that nothing remained the *Moody* court reasoned: "The fact that the termination itself was not effective for ninety days does not affect the result. The filing of the chapter 11 petition cannot expand debtors' rights as against Amoco. [Citations.] When the termination notice was sent, debtors only had a right to ninety days' worth of dealership contracts. The filing of the petition does not expand that right." (*Id.* at p. 1213.)

Here, the intervening act was a change in the law rather than the filing of a bankruptcy petition. Unlike the bankruptcy petition in *Moody*, Proposition 103 *did* serve to expand insureds' contractual rights. In particular that law restricted the right of an insurer to refuse to renew policies. Thus, the reasoning employed in *Moody* is inapplicable.

Equally unavailing is AIU's reliance on *Liberty Mut. Ins. Co.* v. *Wolfe* (1979) 7 Mass.App. 263 [386 N.E.2d 1303]. There, an amendment to a law

prescribing the content of notices of cancellation was prefaced by the statement that " '[n]o . . . liability policy . . . shall be issued . . . unless it contains in substance the following provision:— . . . .' " Because this amendment expressly regulated the content of the actual policy of insurance the court construed it to apply only to policies issued after its effective date. In dicta the court remarked: "If the amendatory language directly regulated notices of cancellation, it would presumably have been applicable to any notice of cancellation mailed on or after [the effective date of the amendment], in accordance with the usual presumption of prospective application. [Citations.]" (*Id.* at p. 1305.) It is this dicta on which AIU mistakenly relies. The *Liberty* court was simply noting that legislation defining *the content* of a cancellation notice should apply prospectively to notices sent after the effective date of the law. Here, as detailed above, Proposition 103 does not regulate the content of nonrenewal notices. Instead, it regulates an insurer's right to nonrenew in the first place.[6]

■ Next, AIU argues that "proposition 103 expresses no intention to retroactively nullify nonrenewal notices sent prior to the effective date of section 1861.03 (c)." This argument lacks merit. In *Calfarm*, the court reasoned that in the absence of any language to the contrary, the nonrenewal restriction should be applied retroactively in view of the fact that the rate-rollback restriction expressly states that it is to be given prospective effect only. The court stated that "[t]he necessary inference [created by the different treatment of the two provisions] is that the nonrenewal provision was not so limited." (48 Cal.3d at p. 827.)

Had the framers of Proposition 103 intended the nonrenewal restriction to be inapplicable to notices mailed prior to its enactment they could have easily so provided. For direction on how to accomplish this, the framers needed only look to the 1968 amendment to the Insurance Code delineating the notice an insurer must provide prior to canceling or refusing to renew a policy. (Stats. 1968, ch. 137.) In enacting these laws the Legislature expressly declared that "[t]his act shall not apply to or affect the validity of any notice of cancellation mailed or delivered prior to the operative date of this act . . . ." (Stats. 1968, ch. 137, § 4, p. 355.) In the absence of any such language limiting the nonrenewal restriction of Proposition 103, the necessary inference is that no such limitation was intended.[7]

---

[6]Moreover, under California law, even if the nonrenewal restriction served only to regulate notices of nonrenewal, that restriction could still validly apply to notices mailed before its enactment as long as the policy had not yet lapsed. (See *Buck* v. *Canty* (1912) 162 Cal. 226 [121 P. 924] [amendment of law regulating the necessary notice prior to a tax foreclosure sale held applicable to a notice given prior to the law's amendment when the sale occurred after the amendment].)

[7]Simply because the framers of Proposition 103 used the word "shall" in delineating when the nonrenewal of a policy is proper is no substitute for the limiting language. (Cf. *People* v.

In an effort to avoid the *Calfarm* court's reasoning AIU lifts out of context a passage from that decision and urges that the sole purpose of the nonrenewal restriction was to thwart actions taken by insurers to nonrenew policies " '*in response to the initiative's enactment.*' " (Original italics.) The *Calfarm* court was not so limited in its reasoning. In concluding that Proposition 103 was intended to apply retroactively to policies issued before its enactment, the court also opined that the nonrenewal restriction was designed to "give policyholders a measure of assurance that their coverage would continue [following the election]." (*Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d at p. 827.)

Continuation of coverage presupposes only that coverage existed on the effective date of Proposition 103. This suit involves only policies that had not lapsed by that date. Accordingly, application of the nonrenewal restriction to the subject policies is consistent with one of the recognized purposes of that provision.

In sum, we conclude that when the *Calfarm* court stated "the initiative's nonrenewal provision was intended to apply to existing contracts," (48 Cal.3d at p. 827) it meant what it said. The fact that a nonrenewal notice was mailed prior to the election is not significant so long as the policy was still in effect on that date.[8] We now turn to whether the application of the nonrenewal restriction to the policies which are the subject of this action is constitutional.

In a footnote, AIU asserts that "[section] 1861.03(c) cannot, consistent with the Contract Clause of the U.S. Constitution, be applied to pre-enactment non-renewals." The *Calfarm* decision is also dispositive of this issue. In *Calfarm*, the court concluded that retroactive application of the nonrenewal restriction was not an unconstitutional impairment of contract.

---

*Allied Architects Assn.* (1927) 201 Cal. 428, 437 [257 P. 511] ["The word 'shall' . . . usually refers to the future . . . ." (Italics added.)].) Here, this "usual" meaning is negated by the fact that the framers of Proposition 103 also used the word "shall" in prescribing the mandatory rate-rollbacks set out in section 1861.01. Despite their use of "shall" in that section, the framers nevertheless went on to expressly make it prospective only. This indicates that the framers did not consider the use of "shall" as conveying "prospective application only" when they drafted section 1861.01. Since the subject nonrenewal provision was part of the same proposition as section 1861.01, we conclude that the framers similarly did not intend "shall" to be construed as "prospective only" when used in that provision.

[8] AIU argues that this construction of Proposition 103 is "singularly ill-suited" to further the goal of affording a measure of assurance that coverage will continue, because it only affects nonrenewal notices mailed 20 or fewer days before the election. AIU misses the point. The date a nonrenewal notice was mailed is of no significance in determining whether the nonrenewal restriction applies. Rather, the determining fact is whether the policy was in effect when Proposition 103 was enacted. If it was, then the nonrenewal restriction applies; if it was not, the restriction does not apply.

Initially, the court explained that for the following reasons any contractual impairment occasioned by that restriction was "relatively moderate and restrained": (1) "The insurer may still refuse to renew policies for nonpayment of premium, fraud or misrepresentation, or substantial increase in the hazard insured against. And when it renews pursuant to Proposition 103 it is guaranteed fair and reasonable rates" (48 Cal.3d at p. 830); (2) "it is clear that during the year prior to November 8, 1988—a year during which almost all automobile insurance policies in effect on that date were issued or renewed—insurers were well aware of the possibility that initiatives or ordinary legislation might be enacted that would affect existing policies" (*id.* at p. 831); and (3) " . . . Proposition 103 does not prevent an insurer from discontinuing its California business." (*Ibid.*)

The fact that a nonrenewal notice was mailed prior to the election does not undermine any of these considerations: (1) insurers could still refuse to renew for the enumerated reasons, (2) if a policy had not actually expired by the election then chances are that policy was either issued or renewed in the year before the election, and (3) insurers could still elect to discontinue business in California. Balanced against this minimal intrusion is the "measure of assurance" that insurance coverage would continue in the wake of Proposition 103. As explained above, this assurance was recognized by the *Calfarm* court as furthering a significant public policy. Accordingly, for the reasons expressed by the court in *Calfarm*, application of the nonrenewal restriction to the subject policies is not an unconstitutional impairment of contract.

■ Finally, in passing, AIU asserts that "enforcement of § 1861.03(c) . . . through civil or criminal penalties would also violate the *ex post facto* clause of the U.S. Constitution." (Original italics.) AIU has utterly failed to fulfill its duty as an appellant by neither citing any authority nor engaging in any analysis to support this bald assertion. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, p. 469.)

Moreover, this assertion is without merit. As Witkin explains: "An *ex post facto law* is a retrospective statute applying to crimes committed before its enactment, and substantially injuring the accused. The [United States and California] Constitutions prohibit the passage of such laws [citations], and it was decided at an early date that the term refers only to *retrospective criminal statutes.* [Citations.]" (Original italics.) (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 419, p. 601.) Here, AIU was not subjected to *any* penalty, let alone a criminal penalty for conduct occurring prior to the enactment of section 1861.03, subdivision (c). Instead, the Commissioner simply ordered AIU to cure its violation of that

section by rescinding its invalid nonrenewal notices. Thus, AIU's claim that it is being subjected to an ex post facto law is unfounded.

## DISPOSITION

The judgment is affirmed. Respondent shall recover her costs on appeal.

George, J., and Goertzen, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 30, 1990.