[No. B046117. Second Dist., Div. Four. Sept. 14, 1990.]

DAIRYLAND INSURANCE COMPANY et al., Plaintiffs and Appellants, v.
ROXANI M. GILLESPIE, as Insurance Commissioner, etc., Defendant and Respondent.

COUNSEL

Munger, Tolles & Olson and Mark B. Helm for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Jack T. Kerry, Deputy Attorneys General, for Defendant and Respondent.

OPINION

WOODS (A. M.), P. J.—Appellants Dairyland Insurance Company and Sentry Insurance appeal from the judgment denying their petition for writ of mandate seeking to compel respondent Roxani M. Gillespie, Commissioner of Insurance of the State of California (Commissioner), to set aside her decision finding that appellants violated the nonrenewal restrictions of Proposition 103.

### BACKGROUND

It is undisputed that in September 1988 both appellants "ceased marketing all property and casualty personal lines policies in the State of

California."[1] In September and October of 1988 appellants mailed notices of nonrenewal for all of the policies of private passenger automobile insurance underwritten by them in California.

The Commissioner concluded that the mandatory renewal provision of Proposition 103 was applicable to nonrenewal notices which were mailed prior to its November 8, 1988, enactment so long as those notices were directed to policies which expired after that time. Based upon this interpretation the Commissioner found that appellants violated the mandatory renewal provision and rendered a remedial order. Appellants then unsuccessfully petitioned for writ of mandate to overturn that decision. During the pendency of this appeal Dairyland submitted a formal application to the Commissioner to withdraw from the California insurance market.[2]

## DISCUSSION

In *AIU* v. *Gillespie* (1990) 222 Cal.App.3d 1155 [272 Cal.Rptr. 334], we concluded that Proposition 103's mandatory renewal provision (Ins. Code, § 1861.03, subd. (c)) applies to nonrenewal notices mailed prior to its effective date so long as the policies to which those notices were directed had not expired by that time. For the same reasons expressed in AIU we reject appellants' assertion that the mandatory renewal provision does not apply to the subject nonrenewal notices because they were mailed prior to the election. By way of a supplemental brief appellants alternatively argue that they were exempt from the mandatory renewal provision because the subject notices were mailed in anticipation of withdrawal from the California automobile insurance market. To support this position appellants rely on *Travelers Indemnity Co.* v. *Gillespie* (1990) 50 Cal.3d 82 [266 Cal.Rptr. 117, 785 P.2d 500].

In *Travelers*, the court concluded that the "mandatory renewal provision does not apply to insurers who withdraw from the California market by use of the statutory withdrawal procedures." (50 Cal.3d at p. 98.) The court held that this exemption applies once an insurer submits its application to withdraw to the Commissioner. Appellants seek to extend this holding to apply to insurers who nonrenew policies *in anticipation* of withdrawing from the California market despite the fact that they have not commenced

---

[1] Appellants represent and the Commissioner does not dispute that Dairyland ceased conducting all insurance business in California and that Sentry continued operating in only a limited number of commercial markets. Appellants further represent that these decisions were made purely upon financial considerations unrelated to the passage of Proposition 103.

[2] Pursuant to stipulation of the parties, we augment the record on appeal to include a certified copy of Dairyland's application to withdraw tendered to the Commissioner on February 1, 1990.

the statutory withdrawal procedure. As we now explain, the reasoning employed in *Travelers* precludes adoption of this proposed expansion.

In opining that an application to withdraw exempts insurers from the mandatory renewal provision, the *Travelers* court focused on the statutory scheme under which an insurer withdraws from the California market. (Ins. Code, § 1070 et seq.) The court stated that "the most reasonable interpretation of the applicable statutes is that once the withdrawal process has been properly commenced by compliance with the statutory withdrawal application requirements, including the surrender of the insurer's certificate to the Commissioner for cancellation, the applicant has the particular status of a withdrawing insurer and may terminate its outstanding automobile policies by nonrenewal." (*Travelers Indemnity Co.* v. *Gillespie, supra,* 50 Cal.3d at p. 100.) The *Travelers* court could not have been clearer: It is the change in status an insurer undergoes upon commencement of the statutory withdrawal process that exempts it from the mandatory renewal provision.

Central to this finding of altered status was the statutory requirement that a withdrawing insurer surrender its certificate of authority. The court explained that this surrender "is not purely symbolic, nor is it merely so that the certificate will be conveniently at hand when the time comes for its cancellation. Rather, the act of surrender effects a change in the insurer's status. In this regard, an analogy may be drawn to a voluntary proceeding for winding up a corporation. The proceeding commences with the adoption of a resolution of the shareholders or directors electing to wind up and dissolve (Corp. Code, § 1900), after which a certificate of election to wind up and dissolve is filed (Corp. Code, § 1901). Once the voluntary proceeding has commenced, 'the corporation shall cease to carry on business except to the extent necessary for the beneficial winding up thereof . . . .' (Corp. Code, § 1903.) [¶] In similar fashion an insurer, by the act of surrendering its certificate for cancellation, has committed itself to the orderly winding up of its affairs in this state and may not thereafter write new business in this state while its certificate remains in the Commissioner's possession. Consequently, a withdrawing insurer differs from other admitted insurers in at least one highly significant respect: it may not write new business." (*Travelers Indemnity Co.* v. *Gillespie, supra,* 50 Cal.3d at p. 101, fn. omitted.)

■ Absent submission of an application to withdraw and surrender of the certificate of insurance no change in status occurs. An insurer can continue to write new business and renew desirable policies the same as it did prior to its decision to withdraw. Concomitant with this lack of impairment of an insurer's ability to conduct business is the obligation to comply

with laws regulating other admitted insurers, including the mandatory renewal provision.

Added to the lack of legal support for appellants' position is the regulatory nightmare acceptance of their view would create. Because an insurer must surrender its certificate of insurance upon applying to withdraw, the Commissioner is supplied with both objective verification that the insurer is actually withdrawing and a means by which to safeguard against abuse. As the *Travelers* court explained: "[S]o long as the Commissioner holds the insurer's certificate, the insurer will be precluded from writing new business and the Commissioner may impose reasonable conditions on the return of the certificate sufficient to protect California residents from any harm or loss occasioned by the insurer's actions." (50 Cal.3d at p. 102.)

Without surrender of the certificate, objective verification as well as the means to protect against abuse evaporates. Virtually every time an insurer is cited for violating the mandatory renewal provision it would have at its disposal the defense that it is contemplating withdrawal from the California insurance market. Once that defense is asserted the Commissioner would have to make the factual determination whether the carrier actually intended to withdraw from the market or whether it was simply using that reason as a ruse to nonrenew unwanted policies. In many cases this determination would be complex and time consuming. Moreover, absent relinquishment of the certificate the Commissioner would obviously be unable to impose conditions upon its return in order to protect California residents from harm. These pitfalls could be avoided by the insurer's simple act of applying to withdraw before commencing to nonrenew policies. We see no reason to relieve insurers from taking this step.

In an effort to paint their position as furthering public policy, appellants argue that allowing an insurer to nonrenew policies in anticipation of applying to withdraw is beneficial to insureds because "[w]hen an insurer runs off its business *before* applying to withdraw, claims are handled by the insurer chosen by the insureds themselves. On the other hand, when an insurer runs off business *after* applying to withdraw, it must secure another carrier to reinsure or assume at least some of its liabilities. This means that a greater number of claims will be processed by a company not of the insured's own choosing." (Original italics.) We find this argument less than genuine.

Under appellants' interpretation an insured is stripped of a policy he is otherwise entitled to renew and sent looking for alternative coverage. Appellants' public policy argument that a claim might ultimately be handled by a reinsurer not of the insured's choosing is unfounded. ■ "A contract by which a reinsurer assumes the policies of the original insurer does

result in the reinsurer being directly liable to the original insureds [citation], but it does not release the original insurer, which remains jointly obligated with the reinsurer [citations]." (*Travelers Indemnity Co.* v. *Gillespie, supra,* 50 Cal.3d at pp. 95-96, italics omitted.) Thus, the insurer of the insured's own choosing remains contractually on the hook. The only difference is that now the insured has two insurers rather than one at his disposal. Finally, if for any reason an insured is uneasy about the prospect of renewing a policy with an insurer contemplating withdrawal from the market he could simply decide not to renew. The mandatory renewal provision affords insureds the option of renewing; it does not mandate their exercise of that option.

Next, appellants seek to escape the court's repeated explanation that it is the insurer's change in status resulting from its surrender of the certificate that exempts it from the mandatory renewal provision, by focusing on the following passage from the *Travelers* opinion: "[Prior to Proposition 103 insurers] withdraw[ing] from the California market could run off [their] automobile business by cancelling those policies subject to cancellation and by issuing notices of nonrenewal on the remaining automobile policies and allowing them to expire. The insurer could do this either before making application to withdraw or while its withdrawal application was pending . . . . [¶] Proposition 103, as already pointed out, left the going-out-of-business provisions intact and an intent to fundamentally alter the withdrawal process cannot reasonably be implied." (*Travelers Indemnity Co.* v. *Gillespie, supra,* 50 Cal.3d at p. 100.) Appellants misinterpret this passage as sanctioning an insurer's unfettered right to run off policies by nonrenewal before an application to withdraw is filed.

In *Travelers* the court was not concerned with an insurer's rights under pre-proposition 103 law to run off policies by nonrenewal prior to its application to withdraw. Such a right was beyond dispute. As the court explained in *Calfarm*: "Before enactment of Proposition 103 insurers had an unfettered right to refuse to renew policies. [Citation.]" (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 826 [258 Cal.Rptr. 161, 771 P.2d 1247], fn. omitted.) In the foregoing quote, the *Travelers* court was simply explaining that prior to Proposition 103 the filing of an application to withdraw did not terminate an insurer's rights to run off policies. Since Proposition 103 left intact the statutory scheme governing withdrawal, the court reasoned that an insurer's right to run off policies upon the invocation of that scheme was also unaffected. The quoted passage means nothing more.[3]

---

[3] Further indication that the *Travelers* court was not approving an insurer's unfettered right to nonrenew prior to submission of an application stems from Justice Broussard's dissent wherein he explains that prior to Proposition 103 an insurer could begin the run off process "before applying to withdraw and, in fact, would have to do so in order to make sure that most of its policies expired before the commissioner ruled. [¶] Even under the *majority*

In sum, we conclude that the mandatory renewal exemption recognized in *Travelers* applies only when an insurer formally applies to withdraw. It is undisputed that at the time appellants mailed the subject nonrenewal notices they had not so applied. Accordingly, that exemption does not apply to validate those nonrenewal notices. The fact that Dairyland subsequently applied to withdraw is of no consequence. That belated application does not serve to retroactively validate nonrenewal notices directed to policies Dairyland was statutorily obligated to renew. Instead, it simply entitled Dairyland to prospectively nonrenew policies in accord with the *Travelers* opinion.

Similarly, the Commissioner properly concluded that the nonrenewal notices sent by Sentry were invalid. The fact that Sentry desired to withdraw from the personal automobile market, while continuing to conduct business in other markets, did not exempt it from the mandatory renewal provision unless and until it formally applied to withdraw. Contrary to appellants' suggestion, simply because the Insurance Code contemplates that an insurer might withdraw from some but not all markets (see Ins. Code, § 1861.11) does not relieve an insurer from compliance with the statutory withdrawal procedures. Appellants' assertion that requiring such compliance encourages insurers to leave all markets rather than the one market they no longer desire is without merit. Rather, it only requires an insurer to comply with the statutory withdrawal statutes with respect to that one market in order to be afforded the exemption recognized in *Travelers*. Sentry, not having done this, is not entitled to that exemption.

### DISPOSITION

The judgment is affirmed. The Commissioner shall recover costs on appeal.

George, J., and Goertzen, J., concurred.

---

*view*, however, Proposition 103 fundamentally alters this process by preventing an automobile insurer from refusing to renew a policy until the insurer has applied to withdraw." (*Travelers Indemnity Co.* v. *Gillespie, supra*, 50 Cal.3d at p. 108; original italics.) The *Travelers* majority's failure to refute this characterization further undermines appellants' analysis to the contrary.