[Civ. No. 14585. First Dist., Div. Two. Jan. 15, 1951.]

THOMAS J. BURGER, Appellant, v. EMPLOYEES' RETIREMENT SYSTEM et al., Respondents.

John J. Dailey and Charles F. Rockwell for Appellant.

Dion R. Holm, City Attorney, Norman Sanford Wolff and Clayton W. Horn, Deputy City Attorneys, for Respondents.

DOOLING, J.—Plaintiff appeals from a judgment in an action for declaratory relief. Plaintiff is a retired member of the fire department of the city and county of San Francisco

engaged in gainful employment. He was retired, not because of disability, on a pension on November 14, 1944, and at all times involved in this action he was under the age of 62 years.

The San Francisco charter prior to January 16, 1945, in section 163 thereof contained the following provision:

"Should any retired person, except persons retired for service prior to January 8, 1932, and persons retired because of disability . . . engage in a gainful occupation prior to attaining the age of sixty-two, the retirement board shall reduce that part of his monthly pension . . . which is provided by contributions of the city and county, to an amount which, when added to the amount earned monthly by him in such occupation, shall not exceed the compensation on the basis of which his pension . . . was determined."

On January 16, 1945, the Legislature approved an amendment to this charter section which had been ratified by the voters at the election of November 7, 1944. By this amendment the language above quoted was cast into a paragraph designated "(b)" and the following language was added to the section:

"The provisions of paragraph (b) of this section shall be inoperative during the existing war between the United States and the Axis powers and for six (6) months after the termination of said war."

The question presented is whether the "termination of said war," as that language is used in the amendment quoted, occurred on December 31, 1946, with the President's official declaration of the cessation of hostilities, thereby making paragraph (b) section 163 of the charter again operative six months thereafter. The trial court by its judgment so determined and further adjudged that after June 30, 1947 (six months after December 31, 1946) paragraph (b) of section 163 became again operative and "the deduction . . . from the monthly pension . . . of Thomas J. Burger for the month of July, 1947 (the month put in issue) as a result of Thomas J. Burger's earnings from outside gainful occupation during said month, was, and is, proper under the provisions of section 163 of the Charter. . . ."

Plaintiff points out that in the presidential proclamation of December 31, 1946, the President stated: *"Although a state of war still exists,* it is at this time possible to declare . . . that *hostilities have terminated."* (Emphasis ours.)

That a technical state of war continued to exist after this presidential proclamation, and still exists, is unquestionable.

If the decision of this appeal depended necessarily on the termination of the war in a technical sense the judgment herein could not stand. But many decisions recognize that in a popular sense a war is terminated with the surrender or capitulation of the enemy and that in that sense the termination of all hostilities is the termination of the war. (*Kaiser* v. *Hopkins,* 6 Cal.2d 537 [58 P.2d 1278] ; *State* v. *Listman,* 157 Wash. 229 [288 P. 913] ; *Hoover* v. *Sandifur,* 25 Wn.2d 791 [171 P.2d 1009, 168 A.L.R. 170] ; *Darnall* v. *Day,* 240 Iowa 665 [37 N.W.2d 277] ; *Scott* v. *Commissioner of Civil Service,* 272 Mass. 237 [172 N.E. 218] ; *Lefevre* v. *Healy,* 92 N.H. 162 [26 A.2d 681] ; *Zinno* v. *Marsh,* 36 N.Y.S.2d 866; *Michael Tuck Foundation* v. *Hazelcorn,* 65 N.Y.S.2d 387; *Di Lello* v. *Carozza,* 188 Misc. 819 [70 N.Y.S.2d 256].)

Where a statute or constitutional provision has been adopted by vote of the electors (as in the case of the charter amendment here) courts have recognized the probability that the voters would understand and intend such an expression in the popular rather than in the technical sense. In *Kaiser* v. *Hopkins, supra,* our Supreme Court in construing a constitutional amendment said (6 Cal.2d at pp. 538-539) :

" 'It is a general rule of stautory construction that the courts will interpret a measure adopted by vote of the people in such a manner as to give effect to the intent of the voters adopting it. (Cooley on Constitutional Limitations, (5th ed.), sec. 66.) It must be held that the voters judged of the amendment they were adopting by the meaning apparent on its face according to the general use of the words employed. . . .

" 'Application of the rules above set forth to the present situation leads to the inevitable conclusion that the voters used the words in question in their "ordinary and common acceptation," and that they intended to exempt those only who had served during the period of actual conflict.' "

In applying the same rule to an amendment to a city charter the Supreme Court of Washington said in *State* v. *Listman, supra* (288 P. at p. 915) :

"What did the people of Seattle mean by this language they used in amending their charter? The words must be read in a sense which harmonizes with the subject-matter and the general purpose and object of the amendment, consistent of course with the language itself. The words must be understood, not as the words of the civil service commission, or the city council, or the mayor, or the city attorney, but as the

words of the voters who adopted the amendment. They are to be understood in the common popular way, and, in the absence of some strong and convincing reason to the contrary, not found here, they are not entitled to be considered in a technical sense inconsistent with their popular meaning."

We can take judicial notice of the man-power shortage caused by the waging of active warfare on many fronts during the prosecution of hostilities in World War II. It seems readily apparent that the purpose of the charter amendment in issue was to furnish an inducement to city and county pensioners under the age of 62 to engage in gainful employment during the period of the labor shortage caused by the active prosecution of the war. With the end of active hostilities and the lapse of six months thereafter the voters could anticipate, what in fact actually occurred, that the man-power shortage in private and public employment would no longer exist. With these facts in view it seems clear that the trial court correctly decided that in adopting this amendment the voters intended the "termination of said war" in the popular and not the technical sense.

Judgment affirmed.

Nourse, P. J., and Schottky, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 15, 1951.