[No. S012604. Dec. 31, 1990.]

LESHER COMMUNICATIONS, INC., et al., Plaintiffs and Respondents, v.
CITY OF WALNUT CREEK, Defendant and Appellant.

**COUNSEL**

David Benjamin and Thomas Haas, City Attorneys, John Truxaw, Deputy City Attorney, Shute, Mihaly & Weinberger, Mark I. Weinberger, Marc B. Mihaly, Wendy S. Strimling and Rachel B. Cooper for Defendant and Appellant.

Barbara S. Blinderman, Stephen C. Volker, John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Susan L. Goodkin and Susan L. Durbin, Deputy Attorneys General, Freilich, Stone, Leitner & Carlisle and Katherine E. Stone as Amici Curiae on behalf of Defendant and Appellant.

McCutchen, Doyle, Brown & Enersen, Sanford M. Skaggs, Daniel J. Curtin, Jr., and Maria P. Rivera for Plaintiffs and Respondents.

Gibson, Dunn & Crutcher, John A. Arguelles, Richard G. Duncan, Jr., Jeffrey T. Thomas, Edward L. Xanders, Ronald A. Zumbrun, Edward J. Connor, Jr., John H. Findley, John M. Groen, Nossaman, Guthner, Knox & Elliott, Alvin S. Kaufer and Winfield D. Wilson as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

EAGLESON, J.—We are asked to decide whether an initiative measure limiting municipal growth which conflicts with a city's general plan amends that plan, and, if it is not an amendment, whether it is invalid. As we explain below, we conclude that the initiative measure in dispute is not a general plan amendment, and that state law which requires that zoning ordinances conform to the general plan invalidates newly enacted zoning ordinances that do not conform to an existing general plan.

I

The Planning and Zoning Law of the State of California (Gov. Code, § 65000 et seq.)[1] mandates the adoption of a general plan by every city and every county in this state (§ 65300),[2] provides that its adoption is a legislative act, and authorizes review by petition for writ of mandate pursuant to section 1085 of the Code of Civil Procedure. (§ 65301.5.)

A general plan must set out a statement of the city's development policies and objectives, and include specific elements among which are land use and

---

[1] All statutory references are to the Government Code unless otherwise indicated. References to constitutional provisions are to the California Constitution.

[2] Section 65300: "Each planning agency shall prepare and the legislative body of each county and city shall adopt a comprehensive long-term general plan for the physical development of the county or city, and of any land outside its boundaries which in the planning agency's judgment bears relation to its planning. Chartered cities shall adopt general plans which contain the mandatory elements specified in Section 65302."

circulation elements. (§ 65302, subds. (a) & (b).)[3] Once the city has adopted a general plan, all zoning ordinances must be consistent with that plan, and to be consistent must be "compatible with the objectives, policies, general land uses, and programs specified in such a plan." (§ 65860, subd. (a)(ii).)

As of November 5, 1985, the date on which Measure H, the initiative ordinance in issue here, was adopted, the general plan of the City of Walnut Creek (Walnut Creek or the city) was growth oriented. It had as an objective, accommodation of "that portion of the projected population growth of Contra Costa County and the Bay Region which reasonably can be accommodated in Walnut Creek." It also provided for land use that would expand residential areas with densities both compatible with existing development and responsive to the need for additional housing; expand the city's central commercial district; enhance the city's position as a subregional administrative and professional office center, and as a subregional retail shopping center; and provide for expansion of existing office, research and limited development employment center. The general plan anticipated, indeed acknowledged in its transportation plan, that: " 'Commute-hour congestion experienced along Ygnacio [Valley Road], Treat [Boulevard], [Freeway] I-680, and other roadways *will continue to increase as new development occurs*. Although some minor improvements can be made to these roadways, *drivers will have to adjust to an increased level of congestion.*' (Italics added.)"

Measure H, designated in its title as a "Traffic Control Initiative," creates a building moratorium triggered by traffic congestion on the same roadways, providing inter alia:

"No buildings or structures shall be built in the City of Walnut Creek unless (1) the AM and PM Peak Hour Volume to Capacity Ratio of all intersections on Ygnacio Valley Road and all intersections within the Core Area along Main Street, Broadway, California Blvd., Mt. Diablo Blvd., Civic Drive and Parkside Drive is .85 or less, and (2) the traffic generated by the proposed building or structure when such traffic is added to the existing

---

[3] The land use element must designate "the proposed general distribution and general location and extent of the uses of the land for housing, business, industry, open space, including agriculture, natural resources, recreation, and enjoyment of scenic beauty, education, public buildings and grounds, solid and liquid waste disposal facilities, and other categories of public and private uses of land. The land use elements shall include a statement of the standards of population density and building intensity recommended for the various districts and other territory covered by the plan. . . ." (§ 65302, subd. (a).)

The circulation element must consist "of the general location and extent of existing and proposed major thoroughfares, transportation routes, terminals and other local public utilities and facilities, all correlated with the land use element of the plan." (§ 65302, subd. (b).)

and expected traffic volumes, will not increase the AM or PM Peak Hour Volume to Capacity Ratio at any of those intersections above .85."

Plaintiffs challenged the validity of Measure H by petition for writ of mandate and complaint for declaratory relief, asserting in their first cause of action (1) that Measure H was a land use ordinance which operated as a zoning ordinance and was inconsistent with the city's general plan, and (2) that the general plan itself was invalid.[4] They alleged, and Walnut Creek admitted in its answer, that peak hour traffic volume at some of the designated intersections already exceeded the .85-volume-to-capacity threshold at which the moratorium took effect, and for that reason the city had already imposed a moratorium on the construction of buildings and structures other than those explicitly exempted by Measure H and those already under construction on its effective date.

Pursuant to stipulation, this count and the sixth count, seeking declaratory relief on that basis, were severed and tried on evidence submitted through declarations and matters of which the court could take judicial notice.[5] After trial the court directed issuance of a peremptory writ of mandate commanding Walnut Creek to void Measure H and to cease enforcing it, ruling that Measure H was invalid because it conflicted with the general plan goals and policy of growth and expansion of commercial and residential development.

The trial court concluded that Measure H was not an amendment of the general plan, observing that it was not described as such in the ballot

---

[4] In the remaining causes of action plaintiffs claimed that Measure H: (second cause of action) was arbitrary, capricious and violated due process; (third cause of action) was arbitrary, discriminatory and violated equal protection; (fourth cause of action) failed to comply with section 65863.6 in that it did not include findings addressing its impact on regional housing opportunities; and (fifth cause of action) failed to comply with Public Resources Code section 21000 et seq., the California Environmental Quality Act, in that an environmental impact report or negative declaration requirements had not been fulfilled.

In the sixth and seventh causes of action plaintiffs sought a declaration that Measure H was, for those reasons, invalid and unenforceable on its face and as applied to applicants for new construction and projects approved but not yet under construction.

The trial court sustained defendant's demurrer to the fourth and fifth causes of action. The second, third and seventh causes of action have been dismissed at plaintiffs' request.

[5] The Court of Appeal questioned whether there could be an appealable judgment since no judgment had then been entered on the fourth and fifth causes of action, but concluded that the trial court had intended a complete disposition. Therefore, the Court of Appeal could amend the judgment appealed from to include the intended, but omitted, rulings. (See *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 920-921, 933 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]; *Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 153-155, 161 [133 Cal.Rptr. 10, 554 P.2d 330].)

The Court of Appeal judgment did not include an order amending the judgment of the trial court, however. Our disposition corrects this oversight.

measure, the analysis of the city attorney, or any of the arguments in favor of or in opposition to the measure. Further support for that conclusion was found in the detailed scope and the self-executing nature of Measure H, features not common to general plan provisions which are the basis for future development to be implemented by additional detailed measures. The court found it unnecessary to determine if Measure H was a zoning ordinance, because the effect of inconsistency with the general plan was the same regardless of whether Measure H was a zoning ordinance or a measure other than a general plan amendment affecting land use.

The peremptory writ was granted on February 23, 1987. Walnut Creek appealed, arguing that Measure H was consistent with the city's general plan because it was compatible with the progrowth policies expressed in the plan, and promoted other policies expressed in the general plan. The city argued in the alternative that even if Measure H was inconsistent with the general plan, it was valid as an amendment of the general plan.

The Court of Appeal rejected Walnut Creek's argument that Measure H was consistent with the general plan,[6] but held that the initiative must be construed as an amendment to the general plan.

While the appeal was pending, Walnut Creek amended the general plan in an effort to incorporate Measure H and to eliminate the inconsistencies identified by the trial court. ■ The Court of Appeal concluded that possible mootness did not preclude consideration of the issues raised by the city. Because a conclusion that Measure H itself amended the general plan might trigger the statutory prohibition of legislative amendment of an initiative measure (see Elec. Code, § 4013) and cast doubt on the validity of the subsequent legislative amendment of the plan, this court agrees.

## II

### GENERAL PLAN AMENDMENT

The Planning and Zoning Law provides for adoption or amendment (§ 65356.1) of a general plan, following notice and at least one hearing, by resolution of the local planning commission (§ 65352) and endorsement reflecting its approval by resolution of the legislative body. (§§ 65353, 65357.) The legislative body's approval must also follow at least one noticed

---

[6] Walnut Creek did not challenge this conclusion in its petition for review or brief on the merits in this court. Counsel acknowledged at oral argument before this court that the city no longer disputes the conclusion that Measure H is inconsistent with the general plan as it existed when Measure H was adopted.

public hearing. (§ 65355.) Nevertheless, because adoption of a general plan is a legislative act, the people's reserved power of referendum (art. II, § 11) has been held to be applicable (*Yost* v. *Thomas* (1984) 36 Cal.3d 561, 570-571 [205 Cal.Rptr. 801, 685 P.2d 1152]) and both the initiative and referendum powers have been held applicable to zoning ordinances (*Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511, 516-517 [169 Cal.Rptr. 904, 620 P.2d 565]; *Friedman* v. *City of Fairfax* (1978) 81 Cal.App.3d 667, 672, fn. 5 [146 Cal.Rptr. 687]) notwithstanding similar procedural requirements which apply to the legislative body.

This court has never considered whether a general plan may be adopted or amended by initiative. Several amici curiae argue that, because compliance with the numerous substantive provisions of the Planning and Zoning Law can be achieved only by a legislative body, that law preempts the local initiative power.[7] We need not address that issue here because we conclude that Measure H was not offered as, and may not be construed as, a general plan amendment.

The Court of Appeal recognized that the courts must resolve all doubts in favor of the people's exercise of the initiative power and uphold the validity of an initiative wherever it is possible to do so. (See *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) It found no significance in the fact that Measure H was not described in its title or in other ballot measures as an amendment to the general plan, but agreed with the trial court that the specificity and self-executing nature of Measure H resembled a zoning ordinance rather than a general plan provision. The court then considered whether those features would have rendered Measure H invalid as part of a general plan, concluding that notwithstanding the purpose of

---

[7] Amici curiae Building Industry Association of Southern California, Inc., and ARVIDA/JMB Partners note, in particular, section 65358, which provides that the "legislative body" may amend all or part of a general plan when deemed to be in the public interest, a power that might be limited by the restriction on repeal or amendment of local initiatives by legislative bodies. (Elec. Code, § 4013.)

They also note that the Planning and Zoning Law now requires the body preparing a general plan to consider regional and statewide concerns, by mandating that counties as well as cities adopt general plans (§ 65300); by requiring consultation with other affected jurisdictions (§§ 65352, 65919.5); by imposing responsibility to cooperate with other local governments in addressing housing needs (§ 65580, subd. (e)), which is declared to be a matter of "vital statewide importance" (§ 65580, subd. (a)); and in implementing housing elements directed to the state housing goal (§ 65581, subd. (d)), and which make provision for the local share of regional housing needs (§§ 65583, subd. (a), 65584).

Administrative regulations require that adoption or amendment of a general plan be done in compliance with the California Environmental Quality Act. (Cal. Code Regs., tit. 14, § 15206, subd. (b)(1).)

the general plan as a "constitution" for future development, a specific and self-executing provision would be permissible in a general plan.

The Court of Appeal recognized inconsistencies between Measure H and other provisions of the general plan, but reasoned that the inconsistencies could be remedied by setting aside the internally inconsistent element. The judiciary, it held, could require legislative correction of the inconsistencies because section 65754, subdivision (a), requires local government to bring a general plan into compliance with the law when a court determines that an element is internally inconsistent.

Finally, the Court of Appeal considered the omission of any statement in Measure H advising the voters that the initiative would amend the general plan. That was not fatal, the court held, because "the profound duty of the courts to 'jealously guard' the initiative process, the will of the Walnut Creek voters cannot be thwarted based on such a hypertechnicality."

We need not consider whether the Court of Appeal was correct in its conclusion that the courts may compel legislative action to eliminate internal inconsistencies in a general plan when the inconsistency is created by an amendment to an existing, valid plan. This question need not be addressed because we disagree with that court's characterization of the absence of advice to the voters that Measure H would amend the general plan as a hypertechnicality.

■ "Although the initiative power must be construed liberally to promote the democratic process [citation] when utilized to enact statutes, those statutes are subject to the same constitutional limitations and rules of construction as are other statutes." (*Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 675 [194 Cal.Rptr. 781, 669 P.2d 17].) The same is true when a local initiative is at issue.

■ We cannot at once accept the function of a general plan as a "constitution," or perhaps more accurately a charter for future development, and the proposition that it can be amended without notice to the electorate that such amendment is the purpose of an initiative.[8] Implied amendments or

---

[8] One not inconsequential impact of the enactment of a municipal initiative is the statutory requirement that any future amendment of the initiative ordinance be submitted to the voters for approval. (Elec. Code, § 4013.) As the Court of Appeal recognized, that statute may apply to limit the power to amend a general plan given the legislative body by section 65358. If so, an initiative amendment might impermissibly limit the authority and responsibility of the legislative body to periodically review and amend the general plan. (See § 65358; *Simpson* v. *Hite* (1950) 36 Cal.2d 125, 134 [222 P.2d 225]; *L.I.F.E. Committee* v. *City of Lodi* (1989) 213 Cal.App.3d 1139, 1148-1149 [262 Cal.Rptr. 166].)

repeals by implication are disfavored in any case (*Flores* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171, 176 [113 Cal.Rptr. 217, 520 P.2d 1033]), and the doctrine may not be applied here. The Planning and Zoning Law itself precludes consideration of a zoning ordinance which conflicts with a general plan as a pro tanto repeal or implied amendment of the general plan. The general plan stands. A zoning ordinance that is inconsistent with the general plan is invalid when passed (*deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204, 1212 [217 Cal.Rptr. 790]; *Sierra Club* v. *Board of Supervisors* (1981) 126 Cal.App.3d 698, 704 [179 Cal.Rptr. 261]) and one that was originally consistent but has become inconsistent must be brought into conformity with the general plan. (§ 65860.) The Planning and Zoning Law does not contemplate that general plans will be amended to conform to zoning ordinances. The tail does not wag the dog. The general plan is the charter to which the ordinance must conform.

Therefore, we necessarily reject Walnut Creek's suggestion that an intent to amend the general plan may be inferred from the very inconsistencies which under the Planning and Zoning Law invalidate the ordinance.

We also reject Walnut Creek's argument that because Measure H could function as a general plan amendment by setting out objectives, principles and standards for future development, thereby serving a general planning function, it may be considered such. Measure H, on its face, regulates land use. As such it resembles a zoning ordinance, not simply a statement of policy to govern future regulations. It does not identify an existing provision of the general plan that is to be amended by adoption of the measure, or state that it is an addition to the plan. Absent some basis in the title, the ballot summary, or elsewhere in the ballot materials to support a conclusion that the voters both understood that the purpose of Measure H was to amend the Walnut Creek general plan and that they intended to do so, Measure H cannot be deemed a general plan amendment.

Whether adopted by the legislative body or the electorate, an ordinance that is not understood by that body as a general plan amendment does not become such retroactively by judicial fiat. Indulging in a presumption that, by the enactment of what appears to be a zoning ordinance, the voters intend to amend a general plan, would violate the clear legislative intent underlying the Planning and Zoning Law. "Unrestricted amendments of the general plan to conform to zoning changes would destroy the general plan as a tool for the comprehensive development of the community as a whole." (*deBottari* v. *City Council, supra,* 171 Cal.App.3d 1204, 1212.)

The dispositive question, therefore, is whether a basis exists for concluding that the voters of Walnut Creek intended to amend the general plan by

adopting Measure H. Since we cannot presume the existence of such intent, it must be found, if it exists, in the ballot measure itself or the explanatory material in the ballot pamphlet.

Notice of the purpose of a local initiative should be given in the title and ballot summary. Article II, section 11, reserved the local initiative power, but in so doing specifies that the power is to be exercised "under procedures that the Legislature shall provide." The constitutional provision has been implemented in division 5 of the Elections Code, commencing with section 4000. The statutory provisions repeatedly emphasize the importance of notice to the voters of the purpose of an initiative ordinance. The "Notice of Intent to Circulate Petition" must include a statement of purpose. (Elec. Code, § 4002.) The statement of purpose must be included in the published and posted notices of intent to circulate. (Elec. Code, § 4003.) The city attorney must prepare a ballot title and summary of the proposed measure expressing its purpose. (Elec. Code, § 4002.5.)

Similar provisions apply to statutory initiatives. (Elec. Code, §§ 3501, 3503, 3507.)     Their purpose, like that of the predecessor requirements of the Constitution and the Political Code (see *Vandeleur* v. *Jordan* (1938) 12 Cal.2d 71 [82 P.2d 455]), is to inform the voters "in order to protect the electorate from imposition" by disclosing "the chief purpose and points of the proposed measure." (*Epperson* v. *Jordan* (1938) 12 Cal.2d 61, 70 [82 P.2d 445].)[9]

Adequate notice is crucial in this context if the purpose of the Planning and Zoning Law is to be achieved by creating and maintaining a general plan that is an "integrated, internally consistent and compatible statement of policies" (§ 65300.5) and a "basic land use charter governing the direction of future land use" in the city. (*City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 532 [160 Cal.Rptr. 907]. See also, *Wallace* v. *Zinman* (1927) 200 Cal. 585, 593 [254 P. 946, 62 A.L.R. 1341]: "If an amendment of the constitution were intended, [former section 1 of article IV] requires steps to be taken that will apprise the voters thereof so that they may intelligently judge of the fitness of such measure as a constituent part of the organic law.")     As the Court of Appeal recognized, far from becoming part of an "integrated, internally consistent

---

[9] Notice of purpose is routinely included in both statewide and local initiatve measures which use strikeout type to designate deletions, italics to designate additions, and/or state, for example, "_____ is added to," "_____ is repealed," or "_____ is amended, to read _____." (See, e.g., Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 6, 1990) *passim*; S.F. Voter Information Pamp. (Nov. 6, 1990) pp. 126, 142, 152.)

and compatible statement of policies," the addition of Measure H to the Walnut Creek general plan would have created impermissible inconsistencies in that plan.[10]

■ The title and ballot summary *are* relevant to construction of Measure H since they did *not* inform the voters that the purpose and effect of Measure H would be amendment of the general plan. Measure H imposed a building moratorium, a matter that is properly the subject of a zoning ordinance. (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra*, 18 Cal.3d 582.) Its provisions gave no notice to the voters that the measure was anything more than an ordinance limiting development. The title, "Traffic Control Initiative," was even less informative than the text of the measure since "traffic control" was nothing more than a potential by-product of the building moratorium for which the measure actually provided.

The analysis of Measure H prepared by the city attorney informed the voters that "existing law" permitted construction consistent with the general plan, zoning ordinance and building code, and that Measure H would change "existing law" by prohibiting construction under the specified circumstances. The analysis therefore informed the voters only that the adoption of Measure H would change the existing law that permitted construction consistent with the general plan, not that it would amend the general plan itself.

■ We agree with the Court of Appeal that the court must, wherever possible, construe an initiative measure to ensure its validity. Basic to all statutory construction, however, is ascertaining and implementing the intent of the adopting body. (Code Civ. Proc., § 1859; *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764 [799 P.2d 1220]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure (*Burger* v. *Employees' Retirement System* (1951) 101 Cal.App.2d 700 [226 P.2d 38]) and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language. (*People* v. *One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471 [224 P.2d 677].)

---

[10]Walnut Creek argues that incorporation of Measure H into the general plan is the only "remedy" that complies with the Planning and Zoning Law and preserves the right of initiative. Exercise of the local initiative power, like the legislative power, is subject to constitutional and statutory limitation, however. (*Legislature* v. *Deukmejian, supra*, 34 Cal.3d 658, 674; *Wallace* v. *Zinman, supra*, 200 Cal. 585, 593-595.) Enforcing compliance with those overriding limitations on the exercise of the power in no way denies the right of initiative.

■ No basis exists for believing that the voters viewed Measure H as anything other than an ordinance in the nature of a zoning ordinance. Therefore, assuming, but not deciding, that the voters may amend a general plan by initiative, Measure H cannot be deemed a general plan amendment.

## III

### REMEDY FOR INCONSISTENCIES

Both the trial court and the Court of Appeal concluded that Measure H is inconsistent with the general plan in effect when Measure H was passed because that general plan was growth oriented and anticipated continued development of housing, commercial and administrative/professional uses. The plan expressly recognized that the anticipated development would lead to traffic congestion which the residents would have to accept. Walnut Creek does not dispute this characterization of the general plan.

The city argued below that Measure H was consistent with other provisions of the general plan. ■ Before this court it argues only that consistency should be determined by comparison with its newly adopted general plan incorporating Measure H, and that, in any event, a compliance decree rather than invalidation of Measure H is the appropriate remedy when the inconsistencies involve policy. Neither argument has merit in light of our conclusion that Measure H is an ordinance in the nature of a zoning ordinance.

A zoning ordinance that conflicts with a general plan is invalid at the time it is passed. (*deBottari* v. *City Council, supra,* 171 Cal.App.3d 1204, 1212; *Sierra Club* v. *Board of Supervisors, supra,* 126 Cal.App.3d 698, 704.) The court does not invalidate the ordinance. It does no more than determine the existence of the conflict. It is the preemptive effect of the controlling state statute, the Planning and Zoning Law, which invalidates the ordinance.

A void statute or ordinance cannot be given effect. This self-evident proposition is necessary if a governmental entity and its citizens are to know how to govern their affairs. Thus, persons who seek to develop their land are entitled to know what the applicable law is at the time they apply for a building permit. City officials must be able to act pursuant to the law, and courts must be able to ascertain a law's validity and to enforce it. The validity of the ordinance under which permits are granted, or pursuant to which development is regulated, may not turn on possible future action by the legislative body or electorate.

An amendment to an invalid statute may itself constitute a valid enactment operative from its effective date (see *Brown* v. *Superior Court* (1982) 33 Cal.3d 242, 252 [188 Cal.Rptr. 425, 655 P.2d 1260]; *County of Los Angeles* v. *Jones* (1936) 6 Cal.2d 695, 708 [59 P.2d 489]), but neither such amendment nor an amendment of the general plan revives an invalid zoning ordinance. (Cf. Gov. Code, § 9611; *Corning Hospital Dist.* v. *Superior Court* (1962) 57 Cal.2d 488, 494 [20 Cal.Rptr. 621, 370 P.2d 325] [revival after temporary suspension of law].)

Amendments to the Walnut Creek general plan approved subsequent to the enactment of Measure H cannot save the initiative as a zoning ordinance. Only the general plan in effect at the time the ordinance is adopted is relevant in determining inconsistency. Since Measure H was inconsistent with the plan in effect when Measure H was adopted, the measure is invalid.[11]

Walnut Creek's suggestion, that it is not necessary that an inconsistent zoning ordinance or land use regulation be invalidated, is based on the statutory authorization in subdivision (b) of section 65860 for actions "to enforce compliance" with the mandate of subdivision (a) of that section that zoning ordinances be consistent with the general plan. The argument rests in part on subdivision (c), which provides: "[i]n the event that a zoning ordinance becomes inconsistent with a general plan by reason of amendment to such a plan, or to any element of such a plan, such zoning ordinance shall be amended within a reasonable time so that it is consistent with the general plan as amended." (§ 65860, subd. (c).)

In *Building Industry Assn.* v. *Superior Court* (1989) 211 Cal.App.3d 277, 297 [259 Cal.Rptr. 325], the Court of Appeal stated in dictum that application of section 65860 to a municipal ordinance limiting growth by a numerical formula, an ordinance which was inconsistent with the city's general plan, could result in a compliance decree rather than a finding of invalidity. The court distinguished *Sierra Club* v. *Board of Supervisors, supra,* 126 Cal.App.3d 698, as involving an internally inconsistent general plan with which no zoning ordinance could be consistent.

We do not agree. Subdivision (c) of section 65860 does not permit a court to rescue a zoning ordinance that is invalid *ab initio*. As its language makes

---

[11]The necessity for this rule would be more readily apparent had this litigation arisen in the context of a petition for mandate to compel issuance of a building permit. The courts could not postpone deciding the validity of a newly adopted zoning ordinance which precluded issuance of the permit, but conflicted with the general plan, until such indefinite future time that the city might act to conform its general plan to the ordinance.

clear, the subdivision applies only to zoning ordinances which were valid when enacted, but are not consistent with a subsequently enacted or amended general plan. It mandates that such ordinances be conformed to the new general plan, but does not permit adoption of ordinances which are inconsistent with the general plan. ■ The obvious purpose of subdivision (c) is to ensure an orderly process of bringing the regulatory law into conformity with a new or amended general plan, not to permit development that is inconsistent with that plan.

■ We also reject the suggestion that by authorizing suits to enforce compliance with the consistency requirement of subdivision (a) of section 65860, subdivision (b) creates a procedure by which ordinances forbidden by subdivision (a) may be validated. Subdivision (a) provides in its entirety: "County or city zoning ordinances shall be consistent with the general plan of the county or a city by January 1, 1974. A zoning ordinance shall be consistent with a city or county general plan only if: [¶] (i) The city or county has officially adopted such a plan, and [¶] (ii) The various land uses authorized by the ordinance are compatible with the objectives, policies, general land uses, and programs specified in such a plan."

■ Again, it is apparent that the legislative purpose underlying subdivision (b) of section 65860 is to permit actions to compel local governments to bring their existing zoning ordinances into conformity with their general plan, not to validate ordinances that were inconsistent with the general plan when adopted.[12]

■ The construction proposed by Walnut Creek is at odds with the Legislature's concern that general plans provide "a comprehensive, long-term general plan for the physical development" of a city (§ 65300), a plan whose mandatory elements may be amended no more frequently than four times a year. (§ 65358.) Conforming a general plan to an inconsistent growth-control ordinance might also be inconsistent with the legislative policy that each city and each county provide in the general plan for its appropriate share of the regional need for housing. (§ 65302.8.) Under that section, amendment of a general plan to limit the number of housing units to be built annually must be accompanied by findings that justify reduction of housing opportunities in the region. This requirement may not be avoid-

---

[12] Section 65754 is to the same effect. It provides that if the court finds inconsistencies in a general plan, the city must amend the general plan to bring it into conformity with the requirements of the Planning and Zoning Law. After that, it must make its zoning ordinances consistent with the amended plan.

The legislative body may not, however, consistent with Elections Code section 4013, amend an initiative zoning ordinance to make it consistent with a general plan if the Planning and Zoning Law does not have preemptive effect.

ed by the adoption of a growth control ordinance through the initiative process. A city may not adopt ordinances and regulations which conflict with the state Planning and Zoning Law. (Art. XI, § 7; *Hurst* v. *City of Burlingame* (1929) 207 Cal. 134, 140 [277 P. 308], overruled on other grounds in *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d 582, 596.) To the extent that *Building Industry Assn.* v. *Superior Court, supra,* 211 Cal.App.3d 277, suggests otherwise, it is disapproved.

The trial court properly ordered issuance of a writ of mandate to compel invalidation of Measure H.

The judgment of the Court of Appeal is reversed. The matter is remanded to the Court of Appeal with directions to modify the judgment of the trial court to order dismissal of the fourth and fifth causes of action and to affirm the judgment as amended.

Lucas, C. J., Broussard, J., Panelli, J., Kennard, J., and Arabian, J., concurred.

**MOSK, J.**—I dissent.

In my view, this case is moot because it is undisputed that in August 1989 defendant City of Walnut Creek amended its general plan, to bring it either substantially (as acknowledged by plaintiffs) or entirely (as claimed by defendant) into conformity with Measure H, the 1985 ordinance challenged in this case. Plaintiffs, assertedly barred from expanding certain facilities by Measure H, have filed yet another suit, apparently to challenge the 1989 general plan as amended. The majority's decision today cannot address that pending suit, the outcome of which will be virtually unaffected by the majority's holding. We should therefore dismiss this appeal.[1]

## I.

"[J]udicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to

---

[1] The city correctly argued before us that this case is moot. Similar views were expressed by numerous amici curiae, including the Cities of Belvedere, Benicia, Chico, Cloverdale, Colma, Commerce, Corte Madera, Cotati, Danville, Delano, Dunsmuir, El Cajon, Half Moon Bay, Hayward, Healdsburg, Indio, Industry, Livermore, Lompoc, Los Altos, Maricopa, Martinez, McFarland, Merced, Milpitas, Modesto, Monrovia, Monterey, Morgan Hill, Nevada City, Oceanside, Oroville, Oxnard, Pacifica, Palm Desert, Palm Springs, Paradise, Paris, Pasadena, Pleasant Hill, Pleasanton, Rancho Mirage, Rialto, Riverside, Roseville, San Carlos, San Diego, San Juan Bautista, San Leandro, San Luis Obispo, San Rafael, Santa Barbara, Santa Paula, Saratoga, Seaside, Sonoma, Tehachapi, Turlock, Vacaville, Vallejo, Ventura, Watsonville, and Woodside, the Counties of Mariposa, Mono, and Plumas, and the City and County of San Francisco.

enable the court to make a decree *finally disposing* of the controversy." (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306], italics added.) It appears that this controversy will continue for years; the decision today will not and cannot put an end to it.[2] Hence, today the majority contravene the rule that we should strive whenever possible to bring matters to a legal conclusion, at most asking the trial and appellate courts to grapple with the consequences of factual matters to be determined on remand.

Moreover, because the majority cannot afford plaintiffs any effective relief, the case should be dismissed for want of a live controversy. (See *Consol. etc. Corp.* v. *United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725].) As I shall explain below, although the majority's rejection of an enactment plaintiffs oppose may provide them some moral support, their legal cause is not advanced by the majority's decision, which amounts to an impermissible advisory opinion.[3] (*People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126].)

*Sierra Club* v. *Board of Supervisors* (1981) 126 Cal.App.3d 698 [179 Cal.Rptr. 261] (hereafter *Sierra Club*), which held that a change in a general plan mooted a consistency challenge, teaches us that dismissal as moot is the best course. The Sierra Club had challenged an ordinance that rezoned a parcel on the ground that it was inconsistent with the county's general plan. The trial court had found the ordinance consistent. In a parenthetical discussion, the Court of Appeal disagreed with that finding and commented that the ordinance thus was void *ab initio*. But it held that the case was moot because while the appeal was pending the county had adopted a new plan and map that cured the inconsistency. (*Id.* at p. 705.)

Calling the mootness issue "troublesome indeed," the Court of Appeal herein acknowledged that *Sierra Club* stood for a "rule that if disputed legislation is repealed during the pendency of an appeal concerning its validity, the appeal will be dismissed as moot." Harmonizing *Sierra Club* with *deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204 [217 Cal.Rptr. 790], the Court of Appeal distilled the following rule: "An inconsistent land

---

[2] Plaintiffs concede this point when they argue that we "can leave to subsequent litigation, as did the court of appeal, the separate question whether the Measure H amendment to the new [1989] General Plan was valid." But they err in suggesting that the subsequent litigation necessarily involves a separate question. As I shall show, the entire matter can and should be resolved in a challenge to the 1989 plan.

[3] Plaintiffs' victory is Pyrrhic because the effect of our decision is to confirm provisionally the 1989 plan's validity: Election Code section 4013 (hereafter section 4013) is no longer a procedural bar to the new plan, and hence that plan will have to be evaluated on its merits if, as seems likely, a challenge to it reaches the appellate courts.

use regulation is invalid at the time it is passed, but if the general plan is amended or a new general plan adopted to eliminate the inconsistency while an appeal is pending on that issue, the appeal will be dismissed as moot." But, perhaps hoping its decision would be final, the Court of Appeal then retrenched, agreeing to decide the case because plaintiffs were already asserting "a host of reasons why the [1989] amendment is 'illegal' . . . , the validity of the mooting event is in hot dispute, . . . [and we] are already on the brink of appellate litigation ad infinitum in this case."

Our grant of review dashed any such hopes that the Court of Appeal may have entertained, and has merely wasted judicial resources. Further legal battles are a foregone conclusion given the collision between plaintiffs' interests, the voters' desires, and the city's acquiesence to those desires. We should have allowed the Court of Appeal decision to stand, thus letting the parties travel the same long road as will the majority's largely ineffectual decision: i.e., to a comprehensive challenge to the 1989 plan. There plaintiffs can present their views on why the 1989 amendment is illegal.[4] To permit a comprehensive challenge to the 1989 plan to proceed would have served judicial economy and the law of abstention handsomely. Instead, the majority arrive at a holding that will be relegated to a footnote in future decisions involving the validity of the 1989 plan.[5]

The majority declare that the section 4013 issue justifies a decision at this time. (See maj. opn., *ante*, at p. 538.) I am not persuaded. True, section 4013 provides in part that, "No ordinance . . . adopted by the voters . . . shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance." But it is obvious that the drafters intended to bar amendments that would thwart the voters' will. In this case, the general plan amendment—adopting wholesale the enactment that the voters favored—would be wholly consonant with the electorate's wishes.

---

[4] Of course the inevitable appeal from the 1989 plan will now lack one item—whether section 4013 made the 1989 general plan invalid. (See maj. opn., *ante*, at p. 538.) But that is a trifle—it is the constitutional and statutory validity of the policies and plans underlying Measure H and the 1989 plan that will be at issue no matter what the court decides today.

[5] There are exceptions to the mootness doctrine, but none applies. As this case is relatively fact-specific, it does not "resolve an issue of continuing public interest that is likely to recur in other cases [citations] . . . ." (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 141 [137 Cal.Rptr. 14, 560 P.2d 1193].) Nor is this dispute "capable of repetition, yet evading review" (*Roe* v. *Wade* (1973) 410 U.S. 113, 125 [35 L.Ed.2d 147, 161, 93 S.Ct. 705]). Rather, review seems to come to this case all too easily, and the parties face the Sisyphean labor of several future appeals.

## II.

The only arguably defensible alternative to dismissing the case would be to construe the 1989 general plan. But to do so would be premature, for this case is a pure consistency challenge, leaving critical constitutional and statutory issues for future consideration. Thus ripeness forbids us from engaging in such a construction.

*Building Industry Assn.* v. *City of Oxnard* (1985) 40 Cal.3d 1 [218 Cal.Rptr. 672, 706 P.2d 285] is instructive. There the plaintiff sought a declaration that an ordinance requiring builders to pay certain capital costs associated with urban growth was invalid. The trial court upheld the ordinance. The plaintiff appealed, and while the appeal was pending the defendant amended the ordinance. We wrote that when "injunctive relief against a legislative enactment is sought[,] the relevant provision for purposes of the appeal is the measure . . . in effect at the time the appeal is decided. [Citations.] . . . [¶] Plaintiff nevertheless urges us to determine the validity of the old ordinance for the benefit of developers who paid the fee pursuant to its terms and who might be entitled to a refund if it is invalid." (*Id.* at p. 3.) We refused: "Plaintiff is an association which merely sought to enjoin enforcement of the ordinance. No specific fee is at issue, and thus there is no aggrieved party with regard to the old ordinance." (*Ibid.*, fn. omitted.) The case at bar is also an action in equity in essence seeking injunctive relief via a writ of mandate, although the words "injunction" or "injunctive relief" do not appear in the prayer for relief. And as in *Building Industry*, "there is no aggrieved party with regard to the old ordinance." (*Ibid.*)

Other cases support the view that only the 1989 plan would be available for review if considerations of ripeness did not preclude evaluation of that plan. "It is settled law that the rights of the parties in an action in equity will be determined on the basis of the law as it exists at the time of the determination, rather than at the time the complaint was filed, and this rule applies to judgments on appeal as well as to judgments in the trial court." (*City of Whittier* v. *Walnut Properties, Inc.* (1983) 149 Cal.App.3d 633, 640 [197 Cal.Rptr. 127] [holding that reviewing court would decide validity of adult-bookstore regulatory ordinance to take effect by reason of decision on appeal, not the ordinance the trial court invalidated]; see also, for the general rule, *White* v. *Davis* (1975) 13 Cal.3d 757, 773 & fn. 8 [120 Cal.Rptr. 94, 533 P.2d 222] [new constitutional provision controlling on appeal because " 'Relief by injunction operates in futuro, and the right to it must be determined as of the date of decision by an appellate court.' "].) Thus, ordinarily a reviewing court must evaluate a denial of a building

permit on the basis of the law at the time of its decision. (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 125-126 [109 Cal.Rptr. 799, 514 P.2d 111].)

## III.

I also regret the undemocratic tenor of today's decision, which runs athwart the will of the citizens of Walnut Creek. Tired of the then-existing general plan's willingness to tolerate ever worse traffic congestion, the voters enacted Measure H on November 5, 1985. Plaintiffs filed suit January 31, 1986, attacking Measure H as inconsistent with the existing general plan. The city apparently was reluctant to enforce the ordinance in full, for it acknowledges that in both 1986 and 1989 the city council asked the voters to weaken Measure H, without success. The city concedes that the voters' rejection of the latter attempt amounted to a popular reaffirmation of Measure H. Only then did the city council accede fully to the voters' desire to reduce congestion: it voted in August 1989 to incorporate wholly or in large part Measure H's provisions into the new general plan.

Thus, the Court of Appeal's holding that Measure H was a permissible amendment to the general plan vindicated the public interest. The majority's holding instead favors the apparent view of the city council, a five-member body, over the views that the electorate has expressed repeatedly. The holding flies in the face of the rule that our overarching duty is to effectuate the intent of the lawmakers, who in the case of an initiative are the voters. (*Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 771 [274 Cal.Rptr. 787, 799 P.2d 1220] (conc. and dis. opn. of Mosk, J.).) The majority acknowledge that we must resolve all doubts in favor of the people's exercise of the initiative power. (Maj. opn., *ante*, at p. 539.) But they then resolve their doubts in a diametrically different direction.[6]

---

[6] The complaint declares that, "City and its citizens will substantially gain from this cause" and that plaintiffs "seek to enforce important public rights and confer significant and widespread benefits . . . on the general public . . . ." While, as I have explained, today's decision confers no meaningful benefit on anyone, the quoted language in the complaint and the nature of the judgment raise the specter that plaintiffs could conceivably seek reimbursement for their attorney fees under a private attorney general theory. (See Code Civ. Proc., § 1021.5.) Understandable resistance by the city will generate still more purposeless litigation.

As mootness places the challenge to Measure H beyond our grasp and lack of ripeness stymies our ability to evaluate the 1989 plan, I would dismiss the appeal on abstention grounds.