Filed 5/30/17

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| CITY OF MORGAN HILL, | No. H043426 |
| Plaintiff and Respondent, | (Santa Clara Super. Ct. No. CV292595) |
| v. | |
| SHANNON BUSHEY, as Registrar, etc., et al., | |
| Defendants and Respondents; | |
| RIVER PARK HOSPITALITY, | |
| Real Party in Interest and Respondent; | |
| MORGAN HILL HOTEL COALITION, | |
| Real Party in Interest and Appellant. | |


Appellant Morgan Hill Hotel Coalition (Coalition) appeals from the superior court's order granting a mandate petition brought by respondent City of Morgan Hill (City) and removing from the June 2016 ballot Coalition's referendum challenging City's ordinance changing the zoning for a parcel owned by respondent River Park Hospitality (River Park). Although Coalition's referendum had properly qualified for placement on the ballot, City claimed that the referendum was invalid because, if the electorate rejected the ordinance, it would *create* an inconsistency between the zoning for the parcel and the

general plan's land use designation for the parcel.  On appeal, Coalition contends that a referendum that seeks to prevent a zoning change from taking effect does not *create* an inconsistency with a general plan's land use designation but merely maintains the preexisting status quo.  The superior court relied on *deBottari v. City Council* (1985) 171 Cal.App.3d 1204 (*deBottari*) in rejecting Coalition's position.  We disagree with *deBottari* and hold that a referendum petition challenging an ordinance that attempts to make the zoning for a parcel consistent with the parcel's general plan land use designation is not invalid if the legislative body remains free to select another consistent zoning for the parcel should the referendum result in the rejection of the legislative body's first choice of consistent zoning.

## I.  Background

This case concerns a vacant parcel at 850 Lightpost Parkway in Morgan Hill owned by River Park.  The land use designation for this parcel in City's general plan was "Industrial" until November 2014.  In November 2014, City amended its general plan to change the land use designation for this parcel to "Commercial."[1]  The parcel's zoning was "ML-Light Industrial" before the November 2014 general plan amendment and remained unchanged after the general plan amendment.

In April 2015, City's city council approved Ordinance no. 2131 (O-2131).  O-2131 would have changed the parcel's zoning from ML-Light Industrial to "CG-General Commercial."  The "General Commercial" zoning would have permitted a hotel on the parcel.  "General Commercial" is just one of a number of commercial zoning districts in City.  On May 1, 2015, Coalition submitted a timely referendum petition challenging O-2131.  The stated purpose of the referendum was to prevent the

---

[1]     City's general plan recognizes three different commercial land use designations: Commercial, General Commercial, and Non-Retail Commercial.

development of a hotel on the parcel. On May 20, 2015, City adopted a resolution accepting a certificate of sufficiency as to the referendum. In July 2015, City "discontinue[d] processing" the referendum because City believed that the referendum "would enact zoning that was inconsistent with" City's general plan. City nevertheless recognized that it could change the parcel's zoning to "Highway Commercial" rather than "General Commercial" and be consistent with the general plan's "Commercial" land use designation for the parcel.

In February 2016, City reconsidered its position. It passed a resolution calling for a June 2016 special election to submit the referendum to the voters. At the same time, it authorized the filing of an action to have the referendum "nullified as legally invalid and removed from the ballot." City filed this action in March 2016 seeking to remove the referendum from the June 2016 ballot.

On March 29, 2016, the superior court, relying on *deBottari*, granted City's petition. It found that City had established the "invalidity" of the referendum by showing that "the current zoning in question is inconsistent with the City's General Plan—and therefore presumptively invalid." The court ordered that the referendum be removed from the ballot and that O-2131 be certified "as duly adopted and effective immediately . . . ." Coalition timely filed a notice of appeal on April 1, 2016.[2]

---

[2] River Park claims that the notice of appeal is flawed because it states that the appeal is from a March 30 order, rather than a March 29 order, and it identifies the case number as "16CV292295" instead of "16CV292595." The latter claim is incorrect. The copy of the notice of appeal in the clerk's transcript (which is file-stamped) correctly identifies the case number as "16CV292595." A copy of the notice of appeal (which is not file-stamped) in the joint appendix misstates the case number as "16CV292295." Because the filed copy of the notice of appeal has the correct case number, it is not flawed in this respect. The superior court's order was dated March 28 and filed on March 29. It is true that the notice of appeal states that the appeal is from a "March 30, 2016" order, but River Park admits that it was not misled by this slight error.

## II. Analysis

The parties agree that we exercise de novo review because the facts are undisputed and the only issue is one of law.

"The referendum is the power of the electors to approve or reject statutes or parts of statutes except urgency statutes, statutes calling elections, and statutes providing for tax levies or appropriations for usual current expenses of the State." (Cal. Const., art. II, § 9.) "The referendum process allows the voters to veto statutes and ordinances enacted by their elected legislative bodies before those laws become effective. [Citation.] Referenda do not enact law and may not address certain subjects. In contrast, the electorate may legislate on any subject by initiative." (*Referendum Committee v. City of Hermosa Beach* (1986) 184 Cal.App.3d 152, 157-158.) If a referendum petition challenging an ordinance is timely filed and certified to be sufficient, "the effective date of the ordinance shall be suspended and the legislative body shall reconsider the ordinance." (Elec. Code, § 9237.) "If the legislative body does not entirely repeal the ordinance against which the petition is filed, the legislative body shall submit the ordinance to the voters . . . . The ordinance shall not become effective until a majority of the voters voting on the ordinance vote in favor of it. If the legislative body repeals the ordinance or submits the ordinance to the voters, and a majority of the voters voting on the ordinance do not vote in favor of it, the ordinance shall not again be enacted by the legislative body for a period of one year after the date of its repeal by the legislative body

---

"The notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.100(a)(2).) "[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59.) Since the superior court issued no order in this case on March 30, respondents could not possibly have been misled or prejudiced by this slight flaw in the notice of appeal. We reject River Park's challenges to the validity of the notice of appeal.

4

or disapproval by the voters." (Elec. Code, § 9241; see *Rossi v. Brown* (1995) 9 Cal.4th 688, 697.)

"[T]he rezoning of land is a legislative act [citation] subject to referendum [citation]." (*Yost v. Thomas* (1984) 36 Cal.3d 561, 570.) "A zoning ordinance shall be consistent with a city or county general plan . . . ." (Gov. Code, § 65860, subd. (a).)[3] "A zoning ordinance that conflicts with a general plan is invalid at the time it is passed." (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 544 (*Lesher*).) However, "[i]n the event that a zoning ordinance becomes inconsistent with a general plan by reason of amendment to the plan, or to any element of the plan, the zoning ordinance shall be amended within a reasonable time so that it is consistent with the general plan as amended." (§ 65860, subd. (c).) "The obvious purpose of subdivision (c) is to ensure an orderly process of bringing the regulatory law into conformity with a new or amended general plan . . . ." (*Lesher*, at p. 546.)

In this case, City's ML-Light Industrial zoning for the parcel did not automatically become invalid in November 2014 because that zoning was consistent with City's general plan prior to the general plan amendment. Instead, City had "a reasonable time" under section 65860, subdivision (c) to amend the zoning of the parcel to make it consistent with the general plan. O-2131 was City's attempt to do so. The question before us is whether the voters could validly utilize the power of referendum to reject City's chosen method of making the parcel's zoning consistent with the general plan.

"[T]he local electorate's right to initiative and referendum is guaranteed by the California Constitution . . . and is generally co-extensive with the legislative power of the local governing body. . . . [¶] . . . [However,] the initiative and referendum power [cannot] be used in areas in which the local legislative body's discretion [is] largely

---

[3]     Subsequent statutory references are to the Government Code unless otherwise specified.

5

preempted by statutory mandate." (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775-776.)

City claims that the electorate's referendum power cannot be used to reject O-2131, because City's discretion with respect to the zoning of the parcel was preempted by section 65860's mandate that the parcel's zoning be consistent with City's general plan. The problem with this argument is that section 65860 did not require City to adopt O-2131. It preempted City from enacting a new zoning that was inconsistent with the general plan, but it did not preclude City from exercising its discretion to select one of a variety of zoning districts for the parcel that would be consistent with the general plan. Since City retained this discretion, section 65860 did not preclude the electorate from exercising its referendum power to reject City's choice of zoning district in O-2131.

City puts misplaced reliance on cases concerning the *initiative* power. (*Mission Springs Water District v. Verjil* (2013) 218 Cal.App.4th 892, 919 [initiative]; *Lesher*, *supra*, 52 Cal.3d at p. 541 [initiative]; *Legislature v. Eu* (1991) 54 Cal.3d 492 [initiative]; *Mervynne v. Acker* (1961) 189 Cal.App.2d 558 [initiative].) The electorate may not utilize the *initiative* power to *enact* a zoning inconsistent with a general plan because section 65860 preludes enactment of a zoning that is inconsistent with a general plan. (*Lesher*, at p. 541.) However, section 65860 permits the *maintenance* of inconsistent zoning pending selection of a consistent zoning. Here, City permissibly maintained the inconsistent zoning of the parcel after the November 2014 amendment of the general plan. The electorate's exercise of its referendum power to reject or approve City's attempt to select a consistent zoning for the parcel simply continued that permitted maintenance of inconsistent zoning. The referendum does not seek to *enact* anything. Since it is undisputed that City could have selected any of a number of consistent zoning districts to replace the parcel's inconsistent zoning, section 65860 did not preclude City or the electorate from rejecting the one selected by City in O-2131.

6

We must confront *deBottari*, as the superior court relied on it, and City continues to rely on it. In *deBottari*, the City of Norco amended its general plan to change the land use designation for a parcel "from residential/agricultural (0-2 units per acre) to residential-low density (3-4 units per acre)." Two weeks after the general plan amendment, Norco adopted an ordinance to rezone the parcel "from 'R-1-18' to 'R-1-10.'" The new zoning ordinance changed the minimum lot size required for single family homes on the parcel from 18,000 square feet to 10,000 square feet, which was consistent with the general plan amendment. (*deBottari*, *supra*, 171 Cal.App.3d at pp. 1207-1208.) A timely and sufficient referendum petition was submitted challenging the zoning change. However, Norco refused to repeal the zoning change or place the referendum before the voters because it claimed that the repeal of the zoning change "would result in the subject property being zoned inconsistently with the amended general plan, contrary to Government Code section 65860, subdivision (a)." The proponents of the referendum unsuccessfully challenged Norco's refusal in the superior court and then appealed to the Fourth District Court of Appeal. (*deBottari*, at p. 1208.)

On appeal, the Fourth District concluded that "the invalidity of the proposed referendum has been clearly and compellingly demonstrated" by the existence of section 65860. (*deBottari*, *supra*, 171 Cal.App.3d at p. 1212.) The Fourth District reasoned: "Repeal of the zoning ordinance in question would result in the subject property being zoned for the low density residential use while the amended plan calls for a higher residential density." It rejected the proponents' argument that section 65860, subdivision (c) permitted Norco to "enact some alternative zoning scheme which is consistent with the general plan" if the voters rejected the zoning change. (*Ibid.*) "Unfortunately, all of the options offered by plaintiff beg the question of whether the voters, *ab initio*, have the right to enact an invalid zoning ordinance. Clearly, section 65860, subdivision (c), was enacted to provide the legislative body with a 'reasonable time' to bring zoning into *conformity* with an amended general plan. It would clearly distort the purpose of that

7

provision were we to construe it as affirmatively sanctioning the enactment of an *inconsistent* zoning ordinance." (*Id.* at pp. 1212-1213.) The Fourth District concluded that Norco had properly refused to submit the referendum to the voters. "[T]he referendum, if successful, would enact a clearly invalid zoning ordinance. Judicial deference to the electoral process does not compel judicial apathy towards patently invalid legislative acts." (*Id.* at p. 1213.)

The Fourth District's reasoning in *deBottari* is flawed.[4] As we have already explained, unlike an initiative, a referendum cannot "enact" an ordinance. A referendum that rejects an ordinance simply maintains the status quo. Hence, it cannot violate section 65860, which prohibits the *enactment* of an inconsistent zoning ordinance. Section 65860 does not automatically render invalid a preexisting zoning ordinance that became inconsistent only after a subsequent general plan amendment. Where, as here, an ordinance attempts to resolve that inconsistency by replacing the inconsistent zoning with a consistent zoning that is just one of a number of available consistent zonings, the legislative body is free to choose one of the other consistent zonings if the electorate rejects the legislative body's first choice of consistent zonings.[5] The new zoning ordinance will be valid, notwithstanding the referendum, so long as "the new measure is 'essentially different' from the rejected provision and is enacted 'not in bad faith, and not with intent to evade the effect of the referendum petition' . . . ." (*Assembly v. Deukmejian* (1982) 30 Cal.3d 638, 678.) Consequently, the existence of section 65860 does not establish the invalidity of Coalition's referendum.

---

[4] The Fourth District's decision in *City of Irvine v. Irvine Citizens Against Overdevelopment* (1994) 25 Cal.App.4th 868, which simply relied on *deBottari*'s rationale, suffers from the same flaw. (*Id.* at pp. 874-875.)

[5] We express no opinion on the validity of a referendum challenging an ordinance that chooses the only available zoning that is consistent with the general plan.

8

### III.  Disposition

The superior court's order granting City's petition is reversed.  On remand, the superior court is directed to enter a new order denying City's petition.  Coalition shall recover its costs on appeal.[6]

---

[6]  In its reply brief, Coalition requests attorney's fees under Code of Civil Procedure section 1021.5.  Coalition has not filed a motion for attorney's fees or any supporting documentation.  Appellate attorney's fees may be sought by motion in the trial court. (Cal. Rules of Court, rule 3.1702(c).)

_____

Mihara, J.

WE CONCUR:

_____

Elia, Acting P. J.

_____

Bamattre-Manoukian, J.

City of Morgan Hill v. Bushey, as Registrar of Voters, etc. et al.
H043426

10

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| Trial Judge: | Honorable Theodore C. Zayner |
| Attorneys for Plaintiff and Respondent, City of Morgan Hill: | Katherine A. Alberts<br>Louis A. Leone<br>Ionan Mondescu<br>Leone & Alberts<br><br>Donald Alan Larkin<br>Office of the City Attorney |
| Attorneys for Defendant and Respondent, Shannon Bushey, as Registrar of Voters, etc.: | James R. Williams<br>County Counsel<br><br>Steve Mitra<br>Assistant County Counsel<br><br>Danielle Luce Goldstein<br>Deputy County Counsel |
| Attorney for Defendant and Respondent, Irma Torrez, as City Clerk, etc.: | Scott D. Pinsky<br>Law Offices of Gary M. Baum |
| Attorneys for Real Party in Interest and Respondent, River Park Hospitality: | Jolie Houston<br>Thomas P. Murphy<br>Berliner Cohen, LLP |
| Attorneys for Real Party in Interest and Appellant, Morgan Hill Hotel Coalition: | Asit S. Panwala<br>Law Office of Asit Panwala<br><br>Jonathan Randall Toch<br>J. Randall Toch, Attorney at Law |

City of Morgan Hill v. Bushey, as Registrar of Voters, etc. et al.
H043426