Filed 3/20/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TOMOMIRO NAKANO,<br><br>    Defendant and Respondent. | H049057<br>(Santa Clara County<br>Super. Ct. No. C2009811) |

The Santa Clara County District Attorney (District Attorney) appeals from the trial court's order terminating probation after respondent Tomomiro Nakano, a Japanese national, returned to Japan. After Nakano pleaded no contest to one felony count of possession of child pornography (Pen. Code, § 311.11, subd. (c)(1)),[1] he was placed on formal probation for three years and ordered to, among other things, complete a sex offender counseling program and register as a sex offender as set forth in section 1203.067.

On appeal, the District Attorney argues the trial court acted in excess of its jurisdiction by terminating Nakano's probation without requiring that he complete a sex offender management program as mandated by section 1203.067.

Nakano counters that, pursuant to section 1203.3, the trial court has the inherent authority to modify or terminate probation. In addition to renewing his motion to dismiss this appeal for lack of jurisdiction, he further argues that the District Attorney's appeal is barred by the equitable doctrines of forfeiture, waiver, and/or estoppel.

---

[1] Unspecified statutory references are to the Penal Code.

We requested and received supplemental briefing on whether the trial court failed to apply the proper standard for terminating probation early, i.e., the "ends of justice . . . good conduct and reform" standard set out in section 1203.3, subdivision (a). As discussed below, we conclude that the trial court abused its discretion when it terminated Nakano's probation early without applying the standard required by section 1203.3, subdivision (a).[2]

We will therefore reverse the order and direct the trial court to reinstate Nakano's probation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual background*[3]

After learning that child pornography had been downloaded to an IP address associated with Nakano, San Jose police officers executed a search warrant at his residence. Nakano was thereafter arrested and charged with felony possession of child pornography. Forensic analysis of Nakano's external hard drive revealed, at a minimum, several hundred videos tagged as child pornography.[4] The device also contained nearly two million images, which were not reviewed in detail, but "a quick review revealed that many were of child pornography." Investigators also discovered an undisclosed amount of child pornography, both videos and images, on Nakano's phone.

---

[2] Section 1203.3, subdivision (a) provides in relevant part: "The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person held."

[3] Aside from the fact that Nakano's offense triggered application of section 1203.067, the underlying details are not relevant to our analysis, so we do not discuss them in detail.

[4] According to the district attorney, only 1,000 of a total of "nearly 17,000 videos" stored on the external hard drive were reviewed by forensic analysts.

### B. *Procedural background*

Nakano was charged by complaint with one felony count of material depicting sexual conduct of a person under the age of 18 in violation of section 311.11, subdivision (c)(1). On December 7, 2020, Nakano entered a plea of no contest as charged[5] after the trial court stated that its "indicated sentence" would be to grant probation with a 16-month suspended sentence. The trial court noted that it had not yet decided on the terms of probation but would await a report from the probation department as well as any papers filed by counsel. The court expressly stated that its "goal in proposing any kind of [probation] that they be such that you be able to return in fairly short order to Japan."

At sentencing on January 14, 2021, the trial court opened the hearing by expressing its belief that it was "in everyone's interest in this case for [] Nakano to be able to return to Japan." The court asked the prosecutor her opinion on terminating Nakano's probation upon his leaving the United States.[6] The prosecutor responded that she opposed that result, and believed that Nakano should be sentenced to a year in county jail. In her view, terminating Nakano's probation would mean that not only would he avoid serving any meaningful time in custody, but he would also not undertake sex offender treatment as required by section 1203.067.

The probation department also expressed its opposition to Nakano leaving the country, stating it "will not allow that." Once Nakano was sentenced, he would be required to register as a sex offender and "comply with the sex containment module." The probation department recommended that Nakano be required to remain in the

---

[5] At his plea hearing, Nakano expressly admitted possessing "over 600 images depicting minor child pornography."

[6] During the hearing defense counsel informed the court that Nakano had already purchased a ticket to return to Japan on January 27, 2021.

country to complete sex offender treatment and register as a sex offender at which point the court could terminate his probation early.

The trial court responded that it was "not interested in doing it that way." Rather it was "interested in [] Nakano being out of the United States[, since] [h]e doesn't have status here." The court then indicated that, upon receipt of proof that Nakano had left the United States, it would "consider . . . modifying his probation to terminate it." After hearing argument from the parties about certain probation terms, the trial court sentenced Nakano to 16 months in prison, but suspended execution of that sentence and granted three years of formal probation. The court further ordered Nakano to register as a sex offender and complete a sex offender management program "for a period of not less than a year up until the entire term of . . . probation." The trial court also imposed a $300 restitution fine (§ 1202.4), plus a $300 probation revocation fine (suspended), but waived all other fines and fees.

On January 28, 2021, the District Attorney filed a "motion for reconsideration" of the sentence challenging the trial court's intention to terminate Nakano's probation absent completion of a sex offender management program. At the February 17, 2021 hearing on that motion, Nakano's counsel informed the court that Nakano had left the United States as planned on January 27 and also presented evidence that he had paid his court fines and fees in full. The District Attorney acknowledged that, prior to his departure, Nakano had registered as a sex offender pursuant to section 290. The trial court noted that it was of "paramount importance" that Nakano "not be back here in the United States, because that was the whole premise of me doing what I did." In the trial court's view it did not "ma[k]e any sense for the public to bear the burden of supervising rehabilitation and corrected action." The trial court continued, stating: "I think I was clear—even at the plea stage—that I wanted to come up with something that was going to get Mr. Nakano off of our collective books and out of this country." The trial court then terminated Nakano's probation.

4

The District Attorney timely appealed.[7]

## II.    DISCUSSION

The District Attorney argues that the trial court acted in excess of its jurisdiction when it terminated Nakano's probation without requiring that he complete a sex offender management program as mandated by section 1203.067.  Nakano argues that section 1203.067 does not limit the trial court's authority to modify or terminate probation under section 1203.3.  Although we agree with Nakano that section 1203.067 does not preclude a trial court from terminating probation early, we decide that, on the facts here, the trial court's failure to utilize the standard required by section 1203.3, subdivision (a) amounts to an abuse of discretion.

### A. *Standard of review and principles of statutory construction*

The parties agree that the interpretation of sections 1203.3 and 1203.067 is an issue of statutory construction and thus we review the matter de novo.  (*City of Saratoga v. Hinz* (2004) 115 Cal.App.4th 1202, 1212, citing *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

The principles of statutory construction are well established.  " ' "Our task is to discern the Legislature's intent.  The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory

---

[7] Nakano moved to dismiss the appeal for lack of jurisdiction, and we denied that motion by separate order dated May 16, 2022.  Nakano's subsequent petition for review was denied by the California Supreme Court on August 17, 2022.  In his responsive brief, Nakano renews his motion to dismiss the appeal, but we do not consider his arguments on that subject.  Our prior order was not entered "without prejudice," however, so it is final.

construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." [Citation.] " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] . . . '[A] construction making some words surplusage is to be avoided.' [Citation.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 378.) "Implied amendments . . . are disfavored." (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 540-541.)

### B. Section 1203.067 does not override the court's authority under section 1203.3

#### 1. Sections 1203.3 and 1203.067

Section 1203.3, subdivision (a) provides: "The court has the authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person held." Under section 1203.3, subdivision (b), the "court's authority in subdivision (a) to revoke, modify, or change probation or mandatory supervision, or to terminate probation, is subject to" providing notice and an opportunity to be heard to the prosecuting attorney, the probation department, and, in relevant cases, the victim(s).

Section 1203.067, subdivision (b)(1) and (2) provides, in relevant part: "(b) The terms of probation for persons placed on formal probation for an offense that requires registration pursuant to Sections 290 to 290.023, inclusive, shall include all of the following: [¶] . . . [¶] (2) A person placed on formal probation on or after July 1, 2012, shall successfully complete a sex offender management program . . . as a condition of

6

release from probation.  The length of the period in the program shall be not less than one year, up to the entire period of probation, as determined by the certified sex offender management professional in consultation with the probation officer and as approved by the court."

### *2. Analysis*

The plain language of section 1203.3 endows trial courts with expansive powers in relation to its probation orders.  Under the statute, a trial court's authority to terminate probation early is substantively circumscribed[8] only by its evaluation of whether "the ends of justice" are served and whether the "good conduct and reform" of the probationer justifies such termination.  (§ 1203.3, subd. (a).)

According to the District Attorney, the court's authority to terminate probation early under section 1203.3 is subject to section 1203.067's requirement that successful completion of a sex offender management program is a "condition of release from probation."  (§ 1203.067, subd. (b)(2).)  While this phrase, i.e., "condition of release from probation," could be read to conflict with, or at a minimum, impose a condition precedent on the court's authority embodied in section 1203.3, we find that the statutes can be harmonized by construing them in context.

We find *People v. Killion* (2018) 24 Cal.App.5th 337 (*Killion*) instructive in this regard.  In *Killion*, the defendant was placed on three years' probation with domestic violence terms under section 1203.097 and, approximately 15 months later, she moved to terminate probation.  (*Killion*, *supra*, at p. 339.)  The trial court denied the motion on grounds that it lacked jurisdiction to terminate probation early because section 1203.097 requires a minimum period of probation of 36 months.  (*Killion*, *supra*, at p. 340.)  In the trial court's view, the legislative intent behind section 1203.097 was to " 'limit the

_____

[8] Section 1203.3, subdivision (b)'s limitations are procedural and there is no dispute here that the trial court provided the requisite notice and opportunity to be heard.

7

Court's sentencing discretion' " (*Killion*, *supra*, at p. 339) and " 'create—to put it mildly—onerous terms of probation for domestic violence offenders, . . . to make sure [trial court's] didn't give them less than 36 months" of probation. (*Id.* at pp. 339-340.) The Court of Appeal reversed, finding that in spite of section 1203.097's express direction that qualifying offenders be placed on probation for a "minimum period of 36 months" (*Killion*, *supra*, at p. 341), section 1203.3 affords trial courts the discretion to terminate probation early. (*Killion*, *supra*, at p. 340.)

The court in *Killion* was persuaded by the fact that section 1203.097 lays out a number of terms and conditions that the court must include when it "imposes probation for a defendant convicted of a domestic violence offense." (*Killion*, *supra*, 24 Cal.App.5th at p. 341.) The first of those conditions is a "minimum period of probation of 36 months." (§ 1203.097, subd. (a)(1).) However, when the defendant subsequently moved to terminate her probation early, the trial court was not "imposing sentence upon defendant, but was tasked with determining whether defendant came within the remedial provisions of section 1203.3" and defendant's motion presented "a matter which is distinct from the imposition of probation." (*Killion*, *supra*, at p. 341.) Section 1203.097 "deals only with the initial imposition of probation at sentencing for domestic violence offenders," whereas "any subsequent remedial provisions of which a defendant might avail herself to reduce the terms and/or length of probation[] . . . is dealt with exclusively in section 1203.3." (*Killion*, *supra*, at p. 341.) The *Killion* court concluded that, by enacting section 1203.097, "the Legislature intended to require an initial imposition of a 36-month term of probation in domestic violence cases, but did not intend to circumscribe the court's discretion to later reduce that term pursuant to section 1203.3 upon a showing of good cause." (*Killion*, *supra*, at p. 341.)

The *Killion* court further noted that "sections 1203.097 and 1203.3 reference each other with respect to the issuance of criminal protective orders. (§§ 1203.097, subd. (a)(2) [the terms of probation shall include a criminal court protective order],

1203.3, subd. (b)(1), (6) [court may terminate protective order which is a condition of probation upon good cause and proper notice].)" (*Killion*, *supra*, 24 Cal.App.5th at p. 342.) This cross-referencing supported the conclusion that the Legislature did not intend for section 1203.097 to impose new limits on trial court's authority under section 1203.3.

Although sections 1203.067 and 1203.3 do not include direct references to each other, we are not convinced that this difference is sufficient to distinguish *Killion* or significantly reduce its persuasive analysis. "We do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied. [Citation.] Rather, we must assume that . . . the Legislature was aware of existing related laws and intended to maintain a consistent body of rules." (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199.) Like section 1203.097, 1203.067 was originally enacted in 1994, and the current language of section 1203.067, subdivision (b) regarding the sex offender management program was added in 2010. Section 1203.3, on the other hand, was first enacted in 1935 and has been amended six times since section 1203.067 was first enacted. At no time has the Legislature seen fit to amend either section 1203.3 or section 1203.067 to make clear its intent to exclude sex offenders from early termination of probation absent successful completion of a sex offender management program.

We are further persuaded by the Legislature's omission of the phrase "notwithstanding any other law" from section 1203.067, subdivision (b). That introductory language, however, does appear in section 1203.067, subdivision (a), which states, "*Notwithstanding any other law*, before probation may be granted to any person convicted of a [specified] felony . . . who is eligible for probation, the court shall" do

three specified things.[9] (§ 1203.067, subd. (a), italics added.) This phrase is a clear restriction on the court's ability to grant probation, demonstrating that the Legislature is well aware of how to express its intent to limit judicial authority when it chooses. As Nakano notes, there are a number of other statutes addressing probation in which the Legislature has utilized this "notwithstanding any other law" signaling its intent to circumscribe the court's options. (See, e.g., §§ 1203.055, subd. (a)(1), 1203.065, subd. (a), 1203.066, subd. (a), 1203.07, subd. (a), 1203.075, subd. (a), 1203.08, subd. (a), 1203.09, subd. (a).)

In enacting section 1203.067, the Legislature did not express an intent to restrict the court's authority to revoke, modify, or terminate probation under section 1203.3 and, therefore we may not deem the Legislature to have implied such a result.

### C. *The District Attorney's arguments of no detrimental reliance and no change in circumstances similarly fail*

The District Attorney also claims that the trial court acted in excess of its jurisdiction because: (1) Nakano's "detrimental reliance" on the trial court's statements regarding his return to Japan is not a basis for overriding section 1203.067's requirements;[10] and (2) there was no change in circumstances permitting the trial court to terminate probation under section 1203.3. We reject both arguments.

---

[9] Specifically, the court must: "(1) Order the defendant evaluated pursuant to Section 1203.03, or similar evaluation by the county probation department. [¶] (2) Conduct a hearing at the time of sentencing to determine if probation of the defendant would pose a threat to the victim. The victim shall be notified of the hearing by the prosecuting attorney and given an opportunity to address the court. [¶] (3) Order any psychiatrist or psychologist appointed pursuant to Section 288.1 to include a consideration of the threat to the victim and the defendant's potential for positive response to treatment in making the report to the court. This section does not require the court to order an examination of the victim." (§ 1203.067, subd. (a).)

[10] Nakano does not respond to the District Attorney's detrimental reliance argument in his brief, but rather claims that the District Attorney should be estopped from challenging the order terminating his probation because it waited until after he left the (continued)

10

First, the District Attorney's "detrimental reliance" argument presupposes that section 1203.067 restricts the trial court's authority to terminate probation under section 1203.03. As discussed above, we conclude that it does not and therefore this argument necessarily fails.

Second, regarding the District Attorney's claim that there was no change in circumstances between the order granting probation on January 14, 2021 and the order terminating probation on February 17, 2021, which justify the modification of probation, it is well established that "[a] change in circumstances is required before a court has jurisdiction to extend or otherwise modify probation." (*People v. Cookson* (1991) 54 Cal.3d 1091, 1095.) " 'An order modifying the terms of probation *based upon the same facts* as the original order granting probation is in excess of the jurisdiction of the court, for the reason that there is no factual basis to support it.' " (*Ibid.*, quoting *In re Clark* (1959) 51 Cal.2d 838, 840.) However, we are concerned here with early termination of probation, not an extension of probation or a modification of probationary terms. The standard for early termination is set forth in section 1203.3, subdivision (a), which makes no mention of a "change of circumstances." Therefore, the District Attorney's arguments on this issue are inapposite.

### D. Forfeiture

We first consider whether we should apply the forfeiture doctrine. The District Attorney and Nakano have opposing views on this question, with Nakano urging us to deem the claim forfeited and the District Attorney arguing that it is not. In the event that we would otherwise find forfeiture, the District Attorney requests in the alternative that we exercise our discretion to consider the matter.

country to do so. We do not reach Nakano's equitable arguments, as they are unnecessary to decide this appeal.

11

Without deciding the forfeiture question, we exercise our discretion to consider the merits of this argument. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887-888, fn. 7 [court has discretion to review forfeited claim].) The standard for early termination of probation set forth in section 1203.3, subdivision (a) is dispositive of the issue on appeal and presents a purely legal issue. (See *County of Colusa v. Charter* (1989) 208 Cal.App.3d 256, 260-261.)

### E. Evidence the trial court applied the proper standard to terminate probation

We next consider the evidence in the record as to whether the trial court applied the section 1203.3, subdivision (a) standard when it terminated Nakano's probation.

### 1. The record

Nakano notes that his briefing in the trial court expressly cited section 1203.3, subdivision (a) and applied it to the facts of the case.[11] He argues that, because the trial court had that briefing on the day it terminated Nakano's probation, the only reasonable inference is that it applied that standard when it made its order.

Nakano also argues that the trial court's repeated references to how it was in "everyone's interest" for Nakano to leave the country would "reasonably fit within the 'ends of justice' " element of section 1203.3, subdivision (a). With respect to "good conduct and reform," Nakano points to the parties' "extensive discussions" with the court, as well as certain documentary evidence Nakano provided, including a psychiatric report, and a mitigation letter as evidence supporting this element.[12] The court thus knew

---

[11] Nakano also recites various canons of appellate review in his supplemental brief, specifically that: (1) we are to presume the lower court knew and applied the correct standard even where it failed to expressly state that standard on the record; (2) it is appellant's burden to establish error and error will not be found in a silent record; and (3) any ambiguity as to whether the lower court applied the proper standard must be resolved in favor of affirmance.

[12] As he did at oral argument, Nakano argues the District Attorney failed to meet the burden of providing an adequate record. He maintains that the District Attorney (continued)

Nakano had engaged in psychotherapy following his arrest and had complied with the court's orders when it terminated his probation.

Finally, Nakano points out that the District Attorney, at oral argument, said that she thought "the court treated it as an equitable decision and sort of squished everything into the interests of justice." In Nakano's view, this statement is an express concession that the trial court considered "the interests of justice" in terminating probation, a phrase which is almost identical to section 1203.3, subdivision (a)'s reference to "the ends of justice."

For its part, the District Attorney cites Nakano's opposition to the motion for reconsideration, in which Nakano argued that he had shown good conduct and reform under section 1203.3, subdivision (a) by undertaking private counseling following his arrest. However, the District Attorney argues the trial court did not mention Nakano's private counseling or otherwise refer to the section 1203.3, subdivision (a) standard at the hearing. Instead, the trial court's comments focused on Nakano's detrimental reliance on its earlier promise[13] as well as its wish to "get Mr. Nakano off of our collective books and out of this country."

### 2. Analysis

Under section 1203.3 a trial court's authority to terminate probation early must be based on its evaluation of whether "the ends of justice" are served and whether the "good conduct and reform" of the probationer justifies such early termination. (§ 1203.3, subd. (a).) We conclude that, while there is evidence the trial court was presented with

---

failed to submit the documents that were provided to the trial court and failed to memorialize the parties' off-the-record discussions on the record.

[13] For example, the trial court stated, "[I]t just seems too late to do this now. [Nakano]'s not here. And . . . I have sentenced him, I have said I was going to do what I am going to do," and "[I]n this case, because of, I think, the imperative of me not telling the defendant one thing, the way it was going to happen and then changing it, materially, I can't grant [the District Attorney's] motion."

13

the proper standard in Nakano's brief, affirmative evidence in the record demonstrates the court did not apply that standard in making its decision.

"The general rule is that a trial court is presumed to have been aware of and followed the applicable law." (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) The presumption will be overcome however by an affirmative showing of error in the record. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549-550.)

"An abuse of discretion is shown when the trial court applies the wrong legal standard." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.) In this case, although Nakano had presented the court with documents reflecting his engagement in private counseling and addressed section 1203.3 in his briefing, the trial court's comments reflect that its justification for terminating his probation early was based entirely on two factors: (1) its belief that it was in "everyone's interest" that Nakano left the country; and (2) its reluctance to renege on its promise to terminate probation when Nakano left the country. Neither of these reasons can support a showing that Nakano had demonstrated "good conduct and reform," nor can they be shoehorned into a showing that termination of his probation served "the ends of justice." (§ 1203.3, subd. (a).) The trial court's paramount rationale appeared to be conserving public resources by "get[ting] Mr. Nakano off of our collective books and out of this country," but these factors are not relevant to whether Nakano demonstrated "good conduct and reform" to justify the early termination of probation, as required by section 1203.3.[14]

Accordingly, we conclude that the trial court abused its discretion by failing to apply the proper standard under section 1203.3, subdivision (a).

---

[14] In assessing a request to terminate probation early, we acknowledge trial courts have wide latitude in considering various factors to determine whether "good conduct and reform" have been shown and the "ends of justice" will be served by early termination of probation. We express no opinion as to whether that standard can be met in this case.

14

*F. Appropriate disposition*

The District Attorney submits that the proper disposition on reversing the trial court's order would be to remand the matter with directions to reinstate Nakano's probation. Nakano suggests that, if we were to reverse the order for failure to apply the standard set forth in section 1203.3, subdivision (a), the appropriate disposition should be to remand for a new hearing with instructions to apply the proper standard.

Having determined that we must reverse the order terminating probation, we conclude that the appropriate course of action is to direct the trial court to reinstate Nakano's probation on the original terms and conditions. Once probation is reinstated, Nakano may again apply for early termination of probation under section 1203.3, subdivision (a).

### III. DISPOSITION

The trial court's February 17, 2021 order terminating Nakano's probation is reversed. On remand, the trial court is directed to vacate the February 17, 2021 order and reinstate Nakano's probation with the original terms and conditions. Upon his request, Nakano is entitled to a new hearing to seek early termination of probation consistent with the standards set forth in Penal Code section 1203.3, subdivision (a).

15

_____
                      Wilson, J.

WE CONCUR:

_____
    Bamattre-Manoukian, Acting P.J.

_____
         Danner, J.

People v. Nakano
H049057

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. C2009811 |
| Trial Judge: | Hon. Robert B. Hawk |
| Counsel for Plaintiff/Appellant:<br>The People | Jeffrey F. Rosen<br>District Attorney, County of Santa Clara<br><br>S. Sheryl Leung<br>Deputy District Attorney<br><br>Kelly Meeker<br>Deputy District Attorney |
| Counsel for Defendant/Respondent: | NOLAN BARTON & OLMOS, LLP<br>Daniel Barton<br>Evan Greenberg |

People v. Nakano
H049057